**WARREN BROTHERS ROADS COMPANY**

v.

**The UNITED STATES.**

**No. 302–61.**

United States Court of Claims.
Dec. 17, 1965.

John A. McWhorter, Jr., Washington, D. C., attorney of record, for plaintiff. John W. Gaskins and King & King, Washington, D. C., of counsel.

Mary J. Turner, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

COWEN, Chief Judge.

This action was filed as the result of a decision by the Comptroller General, who held that the contracting officer's award of a contract to plaintiff was invalid and directed its award to another bidder. Plaintiff had received the award of the subject contract as a result of the disqualification of the lowest bidder by the contracting officer on the ground that the bidder lacked the requisite integrity for performing Government contracts. In doing so, the contracting officer was exercising his discretion under the standards established in Armed Services Procurement Regulations (hereinafter referred to as ASPR) Section 1.-903–1, 32 CFR 55 (January 1, 1960).[1]

---

1. Armed Services Procurement Regulations § 1.903–1 provided in pertinent part:
"*General Standards.* Except as otherwise provided in this § 1.903, a prospective contractor must—

"(b) Have adequate financial resources, or the ability to obtain such resources as required during performance of the contract. * * *

"(c) Be able to comply with the required or proposed delivery or performance schedule, taking into consideration all existing business commitments, commercial as well as governmental (for SBA

The action was taken after an investigation of the lowest bidder, the C. G. Kershaw Contracting Company (hereinafter referred to as Kershaw), revealed certain information upon which the contracting officer based his determination that Kershaw could not be classified as a responsible bidder. Since plaintiff was the lowest responsible bidder, the award was in due time made to it.

Kershaw protested its rejection to the Comptroller General, who issued an opinion directing the cancellation of plaintiff's contract and its reletting to Kershaw. Plaintiff filed timely protests and sought reimbursement for its alleged damages. On April 26, 1961, the General Accounting Office denied plaintiff's claim. In this suit, both parties have moved for summary judgment on the issue of liability, as to which there is no factual dispute.

The Invitation for Bids was issued on January 25, 1960, by the District Engineer, U. S. Army Engineer District, Vicksburg, Mississippi, for the casting of a large number of squares of articulated concrete mattresses for use in revetment work by the defendant for river control. The casting was to be performed in a plant owned by defendant and located at Greensville, Mississippi. Bids were to be accepted within 60 days after opening, and the successful bidder was to begin work within 30 days after notification of award. Paragraph 8 of the Invitation for Bids provided in pertinent part:

8. Award of contract—(a) The contract will be awarded to that responsible bidder whose bid, conforming to the Invitation for Bids, will be most advantageous to the Government, price and other factors considered.

(b) The Government reserves the right to reject any or all bids and to waive informalities and minor irregularities in bids received.

Plaintiff's bid for the proposed work was approximately $601,050. In compliance with the Invitation, plaintiff indicated that it was not a small business within the meaning of paragraph 10 of the Invitation for Bids. The bid submitted by Kershaw, which company fell within the definition of a small business, was for approximately $577,400.

After the bids were received, the contracting officer conducted a pre-award survey, which included a study of the data submitted by the officers of Kershaw and a discussion with them. The contracting officer then determined that Kershaw was not a responsible bidder, as defined in the ASPR, and concluded that the contract should be awarded to plaintiff, inasmuch as its bid was the lowest submitted by a responsible bidder. On March 30, 1960, after it had been advised of the contracting officer's decision, Kershaw filed a formal protest which was submitted to the Chief of Engineers for his decision. On the same date, defendant requested and plaintiff agreed that the time for the acceptance of plaintiff's bid be extended to May 25, 1960.

Kershaw's protest was then reviewed in the Office of the Chief of Engineers. The Chief of Engineers concurred in the contracting officer's determination, and Kershaw's protest was denied in a communication submitted through the President of the Mississippi River Commission.

Thereafter and on or about May 3, 1960, Kershaw applied to the Small Business Administration for a Certificate of

certificates of competency, see § 1.705–6);

"(d) Have a satisfactory record of performance (Contractors who are seriously delinquent in current contract performance, when the number of contracts and the extent of delinquencies of each are considered, shall, in the absence of evidence to the contrary or circumstances properly beyond the control of the contractor, be presumed to be unable to fulfill this requirement (d). * * *

"(e) Have a satisfactory record of integrity;

"(g) Be otherwise qualified and eligible to receive an award under applicable laws and regulations."

Competency, and on May 17, 1960, such a certificate was issued to Kershaw. The elements encompassed in a Certificate of Competency were explained in the ASPR, Section 1.705–6, 32 CFR 41 (January 1, 1960, as revised May 2, 1960), as follows:

(a) SBA has statutory authority to certify the competency of any small business concern as to capacity and credit. "Capacity" means the overall ability of a prospective small business contractor to meet quality, quantity, and time requirements of a proposed contract and includes ability to perform, organization, experience, technical knowledge, skills, "know-how," technical equipment, and facilities. Contracting officers shall accept SBA certificates of competency as conclusive of a prospective contractor's responsibility as to capacity (see §§ 1.903–1 and 1.903–2) and credit (see § 1.-903–1(b)):

\* \* \* \* \* \* \*

(4) *This procedure does not apply where the contracting officer has found a small business concern nonresponsible for a reason other than lack of capacity or credit.* Thus, it does not apply where a concern does not satisfy the criteria of responsibility in § 1.903–1(a), (e), (f), and (g). Where the contracting officer determines that a concern does not meet the requirements of § 1.903–1(d) as to a satisfactory record of performance, the procedure is mandatory only if the unsatisfactory record of performance was due solely to inadequate capacity or credit. However, if the contracting officer has any doubt as to whether the unsatisfactory record of performance can reasonably be attributed solely to lack of capacity or credit, the matter shall be discussed with the local SBA representative. If the local SBA representative is of the opinion that the unsatisfactory record of performance is attribu-

table solely to a lack of capacity or credit, and the contracting officer disagrees, the contracting officer shall, in accordance with Departmental procedures forward the matter to higher authority within his Department for resolution. The decision of such higher authority shall be final. [Emphasis added.]

Since the Chief of Engineers concluded that Kershaw's deficiencies were above and beyond the Certificate of Competency, his office notified the contracting officer on May 17, 1960, to award the contract to plaintiff. Two days later, a representative of defendant requested plaintiff by telephone not to incur any commitments or expenditures on the contract. Within a few days after the award of the contract to plaintiff, Kershaw protested that action to the Chief of Engineers and to the Comptroller General.

In an effort to obtain a withdrawal of the Certificate of Competency, representatives of the Corps of Engineers conferred with the officials of the Small Business Administration on May 20, 1960, but the SBA declined to accede to the request.

On June 2, 1960, at the request of the Comptroller General, the Assistant Secretary of the Army sent the administrative file, together with a report on the matter, to the Comptroller General. The report recommended that the award to plaintiff be allowed to stand and that the decision be rendered as promptly as possible.

In his opinion of June 22, 1960, 39 Comp.Gen. 868, the Comptroller General decided:

1. Most of the deficiencies noted in the report were related to Kershaw's capacity and, as to that, the Certificate of Competency was conclusive.

2. The purported default in the performance of Kershaw's vice president under a private contract was a situation which did not meet the criteria contained in Section 1.903.1(d) of the ASPR, respecting the mini-

mum standards for responsible contractors.

3. There is considerable doubt whether the regulations envisaged delinquencies of the principals of Kershaw under contracts with private parties.

4. Since an unfavorable report made by the Highway Department of the State of Indiana concerning Kershaw's vice president was not supported by competent evidence, it was not a satisfactory index of business integrity, and

5. As a general proposition, a bidder's integrity and business ethics may be properly determined administratively by applying the "causes for debarment" provisions enumerated in Section 1.604.1 of the ASPR, or the causes and conditions for the suspension of bidders set out in Section 1.605.1 of the ASPR.

█ Relying on the Comptroller General's decision, the defendant asserts that the contracting officer exceeded his authority and that the award of the contract to plaintiff was void *ab initio*. Therefore, the first question to be decided calls for the application of the standard announced by this court in John Reiner & Company v. United States, 163 Ct.Cl. 381, 325 F.2d 438 (1963), cert. denied, 377 U.S. 931, 84 S.Ct. 1332, 12 L.Ed.2d 295 (1964) and Brown & Son Electric Company v. United States, 163 Ct.Cl. 465, 325 F.2d 446 (1963). See also Coastal Cargo Company, Inc. v. United States, Ct.Cl., 351 F.2d 1004 (1965). The statute and the applicable regulations confer broad discretion on the contracting officer in deciding who is a responsible bidder. As this court pointed out in Reiner and Brown & Son, it is unnecessary, in passing on the invalidity of the award to plaintiff, for us to decide and we do not conclude here that the Comptroller General's decision was arbitrary or completely erroneous. If the contracting officer acts in good faith and his award of the contract is reasonable under the law and regulations, his action should be upheld. In other words, a determination should not be made that a contract is invalid unless its illegality is palpable.

Integrity has been defined by the Comptroller General as a difference between whether the Contractor *will* perform rather than that he *can* perform. Comp.Gen.Dec. B–151407, September 25, 1963. Also, in Comp.Gen.Dec. B–148124, April 13, 1962, the Comptroller General stated that a contracting officer may conclude that the unsatisfactory performance of a contractor in the past was due solely to lack of perseverance, tenacity, or integrity—elements which are ethical in nature and are unrelated to physical ability to perform.

In the findings he made in support of the award of the contract to plaintiff, the contracting officer pointed out the necessity for completing the casting of the concrete mattresses within the time specified and the loss that the Government would suffer for each day of delay. He also noted that the work required the operation of a highly complex Government-owned plant which was valued at a sum in excess of one million dollars.

The evidence and information relied upon by the contracting officer included a showing that Kershaw was an inactive organization from 1954 to 1960 and that it was reorganized in 1960 with a capitalization of $25,000. Its vice president, Mr. Paul A. Teegarden, was the sole stockholder.

Through the Bureau of Public Roads for the State of Alabama, information was provided that the Highway Department of Indiana, Mr. Teegarden's home state, considered that he was not a responsible bidder in that state and that the highway department considered his operations "fast and loose" because of the numerous small corporations in which he was or had been interested.

At the time the bids on the subject contract were submitted, the only construction contract which Mr. Teegarden was then performing was a contract for the Santa Fe Railroad Company in Texas. A report received from a representative

of that company stated that it had difficulty keeping the contractor going, that the work was behind schedule, that Mr. Teegarden, as superintendent and engineer, visited the site only once or twice each month, and that the railroad company proposed to remove him from its list of acceptable bidders.

Upon the basis of the above and other information obtained by him, the contracting officer determined that there was a reasonable doubt as to the reliability and dependability of Kershaw which, as then constituted, had no record of performance. Since he felt that the urgency for starting the performance of the contract did not allow for a sufficient trial period to dispel the doubt, he concluded that the immediate award of the contract to plaintiff would be in the best interests of the Government.

We do not consider the factors upon which the contracting officer's decision rested to be encompassed within the definition of capacity and credit. They involve questions of integrity and an unsatisfactory record of performance. The contracting officer could reasonably conclude that these deficiencies were not attributable solely to lack of capacity or credit.

In the light of the information at hand, we think it was proper for the contracting officer to consider the delinquencies of the principals of Kershaw on private contracts in determining the integrity of that company as a bidder. In a decision appearing in 39 Comp. Gen. 468, 471 (1959), the Comptroller General stated:

> While it is true that a corporation generally is to be viewed as separate and distinct from its stockholders, it is equally true that a corporation can operate only through the individuals who, as officers, directors, or stockholders, control the activities, policies, and management of the corporation. It follows that the integrity of a corporation can be no greater than the integrity of the individuals who control its operation.

If the Comptroller General intended to hold that Kershaw's integrity and business ethics in this instance should have been determined by applying the "causes for debarment" provisions of the regulations, we are unable to agree that the regulations limit the contracting officer to so rigid a standard. It appears that the Comptroller General's position on this point was modified in a later decision, Comp.Gen.Dec. B–151121, September 13, 1963.

■ For the reasons stated above, we conclude that the contracting officer's determinations were reasonable and proper under the applicable statute and regulations and that the award of the contract to the plaintiff was valid. Therefore, plaintiff is entitled to recover.

■ With respect to its measure of damages, plaintiff argues vigorously that it is entitled to recover not only the amount expended in preparation of its bid and the costs of starting the performance of the contract but anticipated profits as well. Plaintiff urges that this court erred in holding in Reiner and Brown & Son that a contractor's recovery in similar situations is limited to the amount collectible under the Termination-For-Convenience article of the contract. The holding in those cases was based upon the reasoning that when a contracting officer cancels a contract in compliance with a decision of the Comptroller General and we later hold that the cancelled contract was valid, the cancellation is not a wrongful termination of the kind that entitles the contractor to recover common law damages, including anticipated profits, as were allowed in Klein v. United States, 152 Ct.Cl. 8, 285 F.2d 778 (1961). The same principle was recently reaffirmed by this court in Coastal Cargo Co., Inc. v. United States, supra. After reviewing the cases cited by plaintiff and considering the arguments made, we decline to over-rule the challenged decisions. Plaintiff's recovery will be limited to the amount it could collect if the contract had been formally terminated pursuant to the Termination-For-Convenience article.

Defendant's motion for summary judgment is denied. Plaintiff's motion for summary judgment is granted to the extent stated above and the case is returned to the trial commissioner for determination of the amount to be recovered in accordance with this opinion.