OLD DOMINION DAIRY PRODUCTS, INC., Plaintiff,

v.

Harold BROWN et al., Defendants.

Civ. A. No. 79–981.

United States District Court, District of Columbia.

May 14, 1979.

Monroe E. Freeman, Jr., Lucy G. Eliasof, Washington, D. C., for plaintiff.

Lillian McEwen, Ass't U.S. Atty., Washington, D.C. for defendants.

## MEMORANDUM OPINION

GESELL, District Judge.

This is a disappointed-bidder case. Plaintiff was the lowest bidder on two separate contracts to supply milk and related products to Air Force bases located at Okinawa and Yokohama, respectively. Each of its bids was, however, rejected on the ground that plaintiff "lacked integrity" and therefore had not established its "responsibility" as required under the pertinent regulations. Plaintiff contends that the two rejections were illegal and asks, with respect to each, for an injunction awarding the contract to it or, alternatively, for a declaration that defendants' refusal to award the contract was improper. Plaintiff also requests that the Air Force be barred from rejecting any future bids made by plaintiff on the basis of the facts that caused the aforementioned rejections. For the reasons set out below, the Court finds that each of the contracting officers involved acted reasonably and in good faith. The challenged rejections will accordingly not be set aside. Moreover, no basis exists for any of the other relief sought.

Plaintiff is in the business of supplying milk and related products primarily to military installations overseas. For several years, it has held contracts to supply the Air Force with these products at Okinawa and certain other bases. When the Okinawa contract came up for renewal (effective July 1, 1979), the Air Force requested plaintiff to bid. Plaintiff viewed the securing of this contract as of major importance and consequently, after the usual preliminary negotiations, bid for selection. After the contracting officer, MSgt. Trevino, determined that plaintiff was the lowest bidder, he undertook to determine whether or not plaintiff was "responsible." Section 1–904.1 of the Defense Acquisition Regulations ("DAR") required that he, as contracting officer, initiate this inquiry. In fact, he was barred from awarding the contract to plaintiff unless plaintiff's responsibility was affirmatively established by the evidence before him. DAR §§ 1–902; 1–904.1. Furthermore, the regulations mandated that the "contracting officer shall make a determination of nonresponsibility if . . . the information . . . obtained does not indicate clearly that the prospective contractor is responsible." DAR § 1–902. In this case, information was requested from within the Air Force, as permitted by DAR §§ 1–905.1(b); 1–905.3(iii), regarding plaintiff's record of performance under its current contracts. This inquiry immediately brought to the contracting officer's attention information which had been recently developed by an audit of plaintiff's head office records relating to plaintiff's performance under the existing Okinawa contract (No. 5016). According to that audit and a related interpretative report ("audit report"), plaintiff had not complied with the contract's terms in several substantial respects. The report stated that plaintiff had purchased an amount of non-fat dry

milk solids, sugar and vegetable fat that was substantially below what the military believed plaintiffs should have purchased to satisfy the product specifications contained in the contract. The report reached this conclusion after making certain interpolations into and deductions from the contract's price adjustment clause. The report also maintained that plaintiff had, for apparent cost reasons, substituted whey for non-fat dry milk solids and had submitted price quotations for purchased ingredients even though those quotations substantially exceeded the prices actually paid. On the basis of this information, Trevino concluded that plaintiff had acted fraudulently, had garnered undue profits and had made misrepresentations to the Air Force. He made a formal written finding that a satisfactory record of integrity was lacking in plaintiff's performance under the existing Okinawa contract and attached the detailed documentation on which he was relying.

At about the same time, plaintiff was asked to bid on a similar contract for the Yokohama air base. As to this contract, a different contracting officer, W. P. Barrett, had to determine whether or not plaintiff was responsible. In answer to his inquiries, an official telegram from Okinawa was sent referring to the aforementioned audit and making explicit the same performance deficiencies on which contracting officer Trevino had based his conclusion. Relying on this information, Barrett made the same independent determination of nonresponsibility as had contracting officer Trevino.

Plaintiff strenuously contends that the discrepancies noted in the audit report and on which the two challenged adverse actions were founded resulted from an utter misconception of the existing Okinawa contract's provisions (No. 5016) and in particular its price adjustment clause. Plaintiff argues that the price adjustment clause was not intended to control ingredient quantities but was solely meant to act as a means by which the contractor and the government would be protected against the full risk of ingredient cost fluctuations in an easily administrable way. Plaintiff further urges that its products, as delivered under

the old Okinawa contract, were frequently tested for quality by the Air Force and consistently proved to be up to specifications with only very occasional and minor exceptions. Similarly, plaintiff contends that its submission of price quotations conformed to the requirements of the contract and was not intended to be an indication of the prices actually paid.

The Court is not required to and will not decide any of these and related issues of contract interpretation. Whether or not ambiguities inhere in the contract and, if so, how they should be resolved are issues currently before the Armed Services Board of Contract Appeals and will depend upon the development of a fuller record presenting the entire course of dealings between the parties. A far narrower issue is presented in this case.

Not disputed is the rule that a party submitting a responsive low bid must be adjudged "responsible" before it may be awarded a government contract. Necessarily, in making this determination, a contracting officer enjoys a very wide range of discretion. In order to prevail, a complaining disappointed bidder must demonstrate either bad faith or a lack of any reasonable basis to support the adverse action. *Keco Industries, Inc. v. United States*, 492 F.2d 1200, 1205, 203 Ct.Cl. 566 (1974); *Warren Brothers Roads Co. v. United States*, 355 F.2d 612, 615, 173 Ct.Cl. 714 (1965). Here, the nonresponsibility determinations were made independently by the two contracting officers and, in each instance, were amply supported by the audit report, once that report's basic underlying assumptions as to the purpose and effect of the contract's price adjustment clause and other clauses had been accepted. There is absolutely no evidence that would even suggest that either of the contracting officers acted in bad faith in accepting at face value the results of that audit report. The contracting officers were not required to question the premises underlying the report which was official and itself reflected no uncertainty concerning the conclusions reached. The

report provided ample basis for the rejections which were thus clearly reasonable under all the circumstances.

 In both cases the procedures specified in the applicable regulations were adhered to strictly. Plaintiff's claim that it had a constitutional right to notice and an informal hearing before rejection of its low bids is not supported by the regulations, *see* DAR § 1–905.3(ii); Opinion B–151269, 43 Comp.Gen. 140, 141 (1963); furthermore, it is without merit, *see Board of Regents v. Roth*, 408 U.S. 564, 576–78, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), particularly in view of the fact, noted *infra*, that the military has now initiated proceedings under its suspension regulations, which proceedings will provide plaintiff with an "opportunity to clear [its] name," *see* DAR § 1–605.2(a)(1) & (2); *Arnett v. Kennedy*, 416 U.S. 134, 156–58, 171 n.6, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974).

Plaintiff also contends that, without having been afforded a hearing, it has been effectively barred from bidding on all upcoming government contracts. Plaintiff bases this contention on the considerable likelihood that the audit report will come to the attention of every future contracting officer and will induce every such contracting officer to act in the same manner as did contracting officers Trevino and Barrett and find a lack of responsibility. Plaintiff underscores the unfairness inherent in this situation and the necessity for prompt relief by noting that an important contract involving the supply of milk and related products to the Air Force at Korea will soon be coming up for bid. When this issue of plaintiff's *de facto* debarment or suspension was initially presented, the Court denied plaintiff's request for a temporary restraining order, but left open the possibility of more permanent relief at some later juncture. On the day that the trial of this case commenced, however, the Air Force issued an Order of Suspension pursuant to DAR §§ 1–605 *et seq.* In view of this development, plaintiff's future eligibility to bid must be left to plaintiff's pursuit of the remedies now available under the afore-

mentioned regulations. Any constitutional attack on those provisions is most certainly premature. An administrative hearing on the suspension has neither yet been set nor denied.

 For these reasons no basis for any injunctive relief exists. The Court in its discretion is unwilling to entertain plaintiff's alternative prayer for declaratory relief absent proof of a clear violation of duty or palpable illegality. *See generally M. Steinthal & Co. v. Seamans*, 147 U.S.App. D.C. 221, 232–235, 455 F.2d 1289, 1300–03 (1971). Moreover, as noted above, proceedings have already been initiated before the Armed Services Board of Contract Appeals that raise several of the issues aired in this case as to plaintiff's performance under the current Okinawa contract. Nothing in these findings of fact and conclusions of law is intended in any way to affect plaintiff's rights and remedies in that or any other administrative proceeding or before the Court of Claims (should that court's jurisdiction be eventually invoked).

For the reasons set forth above, the complaint is dismissed and the Clerk of Court is directed to enter judgment for defendants.

SO ORDERED.