## BROWN & SON ELECTRIC COMPANY
### v.
### The UNITED STATES.
### No. 76-61.

United States Court of Claims.
Dec. 13, 1963.

Thomas M. Gittings, Jr., Washington, D. C., for plaintiff. King & King, Washington, D. C., of counsel.

Edwin J. Reis, Washington, D. C., with whom was Asst. Atty. Gen., John W. Douglas, for defendant.

Before JONES, Chief Judge, and WHITAKER, LARAMORE, DURFEE and DAVIS, Judges.

DAVIS, Judge.

Plaintiff charges the United States with breaking a valid contract by withdrawing the award and giving it to another bidder. In May 1960, the Air Force invited bids for the modification of a building at Robins Air Force Base in Georgia. The invitation called for proposals on certain electrical and construction work designated as the base work; in addition, bids were requested on a number of additive alternate items which were to "be awarded at the option of the Government contingent upon availability of funds." The invitation stated that the "award will be made on the lowest responsive Base Bid," but also required that bids be entered for both the base bid and all additive alternates. The bid bond requirement was as follows:

"Bid guaranty in a penal sum of 20% (expressed in words & figures) of the bid price will be required in support of each bid if bid price is in excess of $2,000. (See par. 4 of attached SF 22, "Instructions to Bidders.") Failure to submit bid guaranty for receipt by the Government prior to the time fixed for opening of bids is cause for rejection of bid unless failure to do so was a result of delay in the mails for which bidder was not responsible."

When the bids were opened on June 15, 1960, these three bids were the lowest on the base work and those alternates the contracting officer included in the contract at that time:

| Bidder | Base Bid | Base Bid Plus Alternates |
|---|---|---|
| Aaron Torch & Sons, Inc. | $341,584 | $376,334 |
| Brown & Son Electric Co. (plaintiff) | 378,277 | 412,501 |
| Ga. Southern Const. Co | ,380,000 | 408,634 |

Plaintiff's bid was accompanied by a bid bond "not to exceed Ninety Thousand & no/100 dollars ($90,000)." Torch's bid bond said "Twenty Percent (20%) of amount bid $68,316.80," and its bid form recited that enclosed was a bid bond "in the amount of 20% of the amount of bid." Georgia Southern's bid bond stated "Twenty Percent (20%) of amount bid."

Torch's bid was the lowest on both the base unit and the total contract work, but the contracting officer, pursuant to a legal opinion from the Base Judge Advocate, rejected that bid because the tendered bond was only for 20% of the base bid, not 20% of the total bid. The award was then made, on June 30, 1960, to plaintiff which was the second lowest bidder on the base work (though not on the contract as a whole). The formal contract was executed on July 14, 1960.

Immediately after the award, plaintiff began compliance with the requirement in the Notice of Award that it submit a schedule of materials and equipment within 30 days. To obtain the necessary information, plaintiff was compelled (it alleges) to place purchase orders and subcontracts amounting to $265,000 and to obligate itself for other substantial costs (all before July 14th). On July 15th, plaintiff was orally notified to suspend all work because Torch (as well as the Associated General Contractors of America) had protested to the Comptroller General that the award to plaintiff was improper. There followed a written suspension order under the Sus-

pension of Work Clause of the contract. Plaintiff, which had not known of the protests before July 15th, complied with these orders at once.

On September 15, 1960, the Comptroller General upheld the protest and ruled that the award to plaintiff was invalid and that it should go to Torch. On October 6th, the Air Force cancelled plaintiff's contract pursuant to this decision. Plaintiff filed appropriate protests and requested reimbursement by the Air Force. This was refused and the present suit was brought. Both parties have moved for summary judgment on the issue of liability and there is no factual dispute on that aspect.

In Reiner & Company v. United States, Ct.Cl., 325 F.2d 438, decided today, we treat with a similar case of cancellation of a contract following a General Accounting Office ruling that the award to the plaintiff was improper. In that opinion we discuss (a) the judicial standard for determining the legality of awards made by a contracting officer which are thereafter challenged as illegal, and (b) the measure of recovery for the unhappy contractor with a legal contract which is nevertheless cancelled in such circumstances. Those principles are fully applicable here and we deal with plaintiff's case in their light.

Despite defendant's strong urging, we cannot hold the award to plaintiff to have been so plainly a nullity that the whole contract should now be struck down as illegal. The argument for invalidity is twofold: (i) that in no event was plaintiff the lowest responsive bidder to the invitation as issued, and (ii) alternatively, that the invitation itself must be held invalid. Under the standard set forth in Reiner, we can agree with neither branch.

Torch was undoubtedly the lowest bidder, but the contracting officer rejected its bid because the bid bond was only 20% of the base bid, not the full amount bid.[1] The invitation required a "bid

---

1. The sum of $68,316.30, set forth in Torch's bond, is 20% of $341,584, its base bid. Twenty percent of its full bid, $376,334, would be $75,266.80.

guaranty in a penal sum of 20% (expressed in words & figures) *of the bid price*" (emphasis added). It was reasonable to read this as meaning the full amount bid, not merely the base bid. Both plaintiff and Georgia Southern so interpreted it; Torch itself admitted to the Comptroller General that it had intended to make its bond 20% of the full bid; it would be natural for the defendant to desire a bond computed on and covering all the work ultimately covered by the contract. Shortly after the opening, Torch claimed it had made a mistake and attempted to raise the amount of its bond, but, again, it was not unreasonable for the contracting officer to decide that *the modification came too late.* The invitation had specifically warned that the bid bond had to be received "prior to the time fixed for opening of bids." Only the year before, the Comptroller General had demanded strict enforcement of bid bond requirements (which he called "a material part of the invitation") in order, among other things, to prevent bidders from deciding after opening whether or not to try to have their bids rejected or accepted. 38 Comp.Gen. 532, 536–37 (1959); Comp.Gen.Dec. B–140624, Nov. 23, 1959. See also 39 Comp.Gen. 827, 829 (1960) (rejecting an award to a low bidder who inadvertently submitted a bond for 10% rather than 20%, of the bid); ASPR § 2.403, 32 C.F.R. § 2.403 (1960 Supp.). In his opinion on Torch's protest, the Comptroller General recognized himself that "strict rulings have recently been made with respect to the bid guaranty requirements expressed in the invitation," and he based his different conclusion here on what he called "the unusual circumstances in this case." The contracting officer was not unreasonable in thinking that no such exception should be made to the requirement that bids must conform to the invitation. We do not say that it was wrong or arbitrary for the Comptroller General to take the position he did. We do say that he was not plainly right as a matter of law, or the contracting officer plainly wrong.

Although Georgia Southern's total bid was lower than plaintiff's, its base bid was higher. The invitation said, in the plainest words, that the "award will be made on the lowest responsive Base Bid." The full contract price (including the additives) was not to be the standard. Once Torch's bid was rejected for non-compliance with the bid bond requirement, the contracting officer was required to grant the contract to plaintiff (with its lower base bid) if the terms of the invitation were to be followed. Under the invitation, plaintiff was the next lowest responsible and responsive bidder.

■ Defendant's alternative contention is that the invitation was invalid because it called for the award to be founded on the base bid alone. This is said to be contrary to the requirement of statute and regulation that awards be made to the lowest responsible bidder.[2] We note, first, that the Comptroller General does not appear to have considered the invitation unlawful. He directed that the award be made to Torch as the low bidder; if the invitation was illegal no award should have been made and the procurement re-advertised under a corrected invitation.[3] Here, too, there is room for dispute, but we believe the contracting officer to have acted reasonably in accord with the "lowest responsible bidder" requirement when he included this provision. Additives are portions of the work which may never be ordered because funds are not available. This procurement came toward the close of the fiscal year ending June 30, 1960. The invitation went out on May 16th and was to be opened on June 15th. The contract-

2. Price was the only variable factor in this procurement; performance time was fixed by the invitation.

3. The basis of the Comptroller General's ruling is not entirely clear, but on the whole he seems to have treated the inclusion of the requirement that bids be measured by the base proposal as an error or mistake, rather than an illegality.

ing officer knew on May 16th that he had money enough for the base work but he was uncertain as to the additives. Appropriated money is often very tight just before June 30th. He therefore confined the area of competition to the base bid because, as of May 16th, he and the bidders could only be sure of that much. Perhaps, the chances of including the additives were not large at that time; perhaps he was not sure how many of the five additives could or would ultimately be covered; or it may be that he knew that the additive bids (in themselves) were unlikely to vary very much. These were factors to be considered. True, the contracting officer might have indicated in the invitation that the award would be made on the base work if that was all to be ordered, and on the full contract price if money was found for the additives by June 15th; but this course might have excessively complicated the bidding if one, or some, rather than all, of the additives were finally chosen to be included.[4] We cannot say, on balance, that the contracting officer necessarily violated the "full and free competition" demanded by Congress in choosing as his guide the large core of the procurement, the base work, which was almost 90% of the ultimate project. There was no plain illegality compelling this court so to declare and to deprive plaintiff of all recovery.

For these reasons, we hold, under one principle discussed in Reiner, that in the circumstances of this case plaintiff's contract should not be deemed void.

Under another principle of Reiner, we hold that plaintiff's recovery is not common-law damages (including unearned but anticipated profits) but the money to which it would be entitled on a

termination of the contract for the Government's convenience. (This contract contained such a clause.) Unlike the Reiner case, there is no agreement here as to what that sum would be. It might be argued that this determination should first be made within the Defense Department by the contracting officer and the Board of Contract Appeals. We do not follow that course, however. This is not a case in which the contract was actually terminated (or sought to be terminated) under the termination article. It is a case in which the agreement was cancelled for other reasons, now found to be wrong, but in which the doctrine of College Point Boat Corp. v. United States, 267 U.S. 12, 15–16, 45 S.Ct. 199, 200–201, 69 L.Ed. 490 (1925) (discussed in the Reiner opinion) "operate[s] to curtail the damages recoverable" when suit is brought for a breach. In such a case, there is no requirement of the contract or the Wunderlich Act, 41 U.S.C. §§ 321–322, that the damages be computed administratively; the termination article is invoked only as the limiting measure of recovery not as its source. The case comes to the court without any prior proceedings before the agency tribunals. Cf. Stein Bros. Mfg. Co. v. United States, Ct.Cl., No. 389–59, decided July 12, 1963, slip op. p. 5. A trial commissioner can take the necessary evidence and make the initial determination, following as nearly as he can the criteria of the termination article. Cf. G. L. Christian and Associates v. United States, Ct.Cl., 312 F.2d 418, 427.

Defendant's motion for summary judgment is denied, and plaintiff's motion for summary judgment is granted. Judgment is entered for plaintiff. The amount of recovery will be determined under

4. Defendant says that, under the type of invitation used here, bidders would tend to understate their base bids in order to get the contract, and at the same time increase their additive bids out of all measure. This danger exists to some extent, but it is mitigated by the fact that the bidder never knows whether or not the additives will be included; a bidder without this assurance is not likely to understate his base bid by much and therefore true competition will not be destroyed. Moreover, the contracting officer can always reserve the right to reject all bids and to re-let, if the additives turn out to sky-rocket the award.

Rule 38(c) in accordance with this opinion.

LARAMORE, Judge (concurring):

I concur for the reasons stated in my concurring opinion in Reiner & Co. v. United States, Ct.Cl., 325 F.2d 438.

WHITAKER, Judge (concurring in part and dissenting in part):

I concur in that part of the opinion which holds that the contract was validly awarded to plaintiff in the first instance, and later was wrongfully cancelled. I dissent from the holding that the measure of damages is prescribed by the termination-for-convenience-of-the-Government clause, which was not invoked. My reasons are stated in my dissent in Reiner & Co. v. United States, Ct.Cl., 325 F.2d 438.