**COASTAL CARGO COMPANY, Inc.**

v.

**The UNITED STATES.**

No. 467–59.

United States Court of Claims.
Oct. 15, 1965.

Edward K. Wheeler, Washington, D. C., attorney of record, for plaintiff. Burton K. Wheeler, Richard H. Strodel, and Wheeler & Wheeler, Washington, D. C., of counsel.

R. W. Koskinen, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, and COLLINS, Judges.

COLLINS, Judge.

The Department of the Air Force, in September 1958, awarded to plaintiff a contract for the transportation of pas-

sengers between Charleston, South Carolina, and Nouasseur, Morocco. Subsequently, after plaintiff had been performing for more than 2 months, the Air Force canceled the contract on the ground that the award to plaintiff had been invalid. In this action, plaintiff charges that the cancellation constituted a breach of contract; plaintiff seeks to recover its unreimbursed expenses and, in addition, anticipated profits.

The pertinent facts can be summarized as follows: On August 13, 1958, the Military Air Transport Service (hereinafter "MATS") issued invitations for bids regarding 13 items of airlift service. One of these items, No. 7, is involved in the present suit. Only "small business firms" were permitted to bid with regard to item 7. Finding 6. The bid opening was held on September 4, 1958. Three firms submitted bids which were lower than plaintiff's. Before the contracting officer could make an award, he was required to obtain from the MATS Capability Survey Committee a recommendation as to the qualifications of the low bidders.

On September 11th, the committee issued a negative report as to each of the three lowest bidders. The contracting officer accepted the committee's recommendation that the three low bids be rejected. Moreover, the contracting officer stated that he had decided to (1) find that a condition of urgency existed, (2) issued a certificate to that effect, and (3) proceed with the procurement without referring the rejected bids to the Small Business Administration.[1] There-

1. The contracting officer was acting pursuant to Armed Services Procurement Regulations § 1–705.6 (revised June 11, 1958), as amended, 32 C.F.R. § 1.705–6 (1960), which provided, in part, as follows:
"(b) If a small business concern has submitted an otherwise acceptable bid or proposal but has been found by the contracting officer to be nonresponsible as to capacity or credit, and if the bid or proposal is to be rejected for this reason alone, (i) SBA shall be notified of the circumstances so as to permit it to issue a certificate of competency, and (ii) award shall be withheld pending either

SBA issuance of a certificate of competency or the expiration of ten working days after SBA is so notified, whichever is earlier; subject to the following:
"(A) this procedure is mandatory *except* where the contracting officer certifies in writing that award must be made without delay and inserts in the contract file a statement signed by the contracting officer justifying the certificate;" (Emphasis supplied.)
Plaintiff suggests that, since bidding on item 7 was limited to "small business concerns." ASPR § 1–705.6 may not have been applicable to that item. Plaintiff

after, it was determined that plaintiff was capable of providing the needed transportation. On September 18, 1958, the contracting officer notified plaintiff, by telegram, that it would be awarded the contract.

As a result of protests by the companies whose bids had been rejected, investigations were commenced by the Air Force and by the General Accounting Office (hereinafter the "GAO"). One alleged irregularity related to the preparation of the certificate of urgency. The investigations disclosed that the contracting officer had not executed the certificate until September 25, 1958, although he had dated it September 14, 1958.

On October 24, 1958, the GAO issued an opinion to the effect that (1) since the certificate of urgency was issued subsequent to the award of the contract to plaintiff, such certificate was invalid and (2) therefore, the low bidders were entitled to have their capacity judged by the Small Business Administration (hereinafter the "SBA"). On December 9, 1958, after the SBA had determined that Los Angeles Air Service, Inc. (hereinafter "Los Angeles"), the second lowest bidder, was qualifed to perform, the GAO ruled that the rejection of the bid of Los Angeles had been erroneous. The GAO directed the cancellation of the award to plaintiff and this was accomplished on December 18, 1958. On the same date, the contract was awarded to Los Angeles.[2]

Upon receipt of the notice of cancellation, plaintiff ceased performance of the contract. Subsequently, plaintiff submitted a claim to the GAO. After the denial of its claim, plaintiff instituted the present suit.

The initial question is whether the award to plaintiff was invalid. Defendant contends that the contracting officer violated the applicable regulations when he failed to refer to the SBA the matter of the competency of Los Angeles and of the other low bidders. Therefore, according to defendant, the subsequent award of the contract to plaintiff was illegal. We do not agree with the assertions of defendant.

■ First, it must be noted that referral to the SBA was not required in *every* instance when the bid of a small business concern was rejected for lack of capacity or credit. The pertinent regulation, ASPR § 1–705.6, provided in part, as follows:

> * * * this procedure [*i. e.,* submission to the SBA] is mandatory *except* where the contracting officer certifies in writing that award must be made without delay and inserts in the contract file a statement signed by the contracting officer justifying the certificate; (Emphasis supplied.)

Here, the contracting officer, acting in good faith, sought to come within the terms of this exception.[3]

■ Defendant argues that, at the time of the award, there was no need to proceed without delay. Thus, defendant asks us to declare that the contracting officer erred when he determined that a

---

notes that the purpose of the referral procdure is to assure that "small businesses" receive their fair share of Government contracts. Plaintiff's position is a reasonable one. However, in view of the decision which we reach, it is unnecessary for us to pass upon plaintiff's assertion.

2. Various claims of Los Angeles arising out of its contract, are the subject of Trans International Airlines, Inc. v. United States, Ct.Cl., 351 F.2d 1001.

3. As indicated above, the fact which triggered the actions of the GAO (and ultimately the cancellation of plaintiff's award) was the failure of the contracting officer to prepare a certificate of urgency until after the award to plaintiff. This matter was not relied upon by defendant in its brief and oral argument. Furthermore, it is apparent that the time of execution of the certificate is not decisive. Here, the significant fact is that, before awarding the contract to plaintiff, the contracting officer *had determined* that the procurement must proceed without delay. Finding 12.

condition of urgency existed.[4] We can assume that, under appropriate circumstances, a court could overturn the decision of a contracting officer that an award must be made without delay. However, this is not a case where interference with the discretion of the contracting officer would be proper.

The rejection of the low bidders took place at the meeting held on September 10–11, 1958. Finding 12. Thus, at that point, it became necessary for the contracting officer to determine whether to submit the matter to the SBA. In light of the existing conditions, we cannot say that the decision reached by the contracting officer was either unreasonable or improper.[5] For example, the Air Force desired the airlift service to begin by October 1, 1958, and this left a relatively short time for completing award of the contract and commencing performance. Therefore, we conclude that the contracting officer did comply with the regulations and that award of the contract to plaintiff was proper and valid. Cf. John Reiner & Co. v. United States, 325 F.2d 438, 163 Ct.Cl. 381, 387 (1963), cert. denied, 377 U.S. 931, 84 S.Ct. 1332, 12 L. Ed.2d 295 (1964). It follows that plaintiff is entitled to recover.

As to the proper theory of recovery, our decision in Reiner, supra, is relevant. In Reiner, as in the present case, the plaintiff's contract was canceled as the result of a GAO ruling that the award was improper. We held that the award to Reiner was not void, but was lawful. 325 F.2d at 400, 163 Ct.Cl. at 387. However, Reiner's recovery was limited to that provided for in the termination-for-convenience clause. Thus, there was no

entitlement to such items as unearned anticipated profits. This court stated, 325 F.2d at 443, 163 Ct.Cl. at 392, the following:

\* \* \* The contracting officer on plaintiff's contract probably thought that he was cancelling the agreement for illegality. That excuse was not a valid justification as we now know, but just as in College Point Boat Corp. v. United States [267 U.S. 12, 45 S.Ct. 199, 69 L.Ed. 490 (1925)] a good ground did exist in the far-reaching right to terminate under the termination article. That justifiable cause controls the case and "operate[s] to curtail the damages recoverable" \* \* \*.

The majority opinion went on to point out, 325 F.2d at 444, 163 Ct.Cl. at 393, that:

Just as the failure to invoke the termination article leaves untouched the defendant's right to rely on the damage limitation of that clause, so the failure to follow the termination procedures of the Armed Services Procurement Regulations (ASPR) is ineffective to broaden plaintiff's rights of recovery. \* \* \* Unless the contractor can show that he has been injured by the failure to pursue the ASPR procedures, such a lapse is immaterial to his recovery. \* \* \*

We found that Reiner had not been hurt by the informal procedures and, as indicated, the judgment was restricted to the amount collectible on a termination for convenience.

■■ With regard to the case at bar, we are bound by the reasoning of John Reiner & Co. v. United States, supra.[6]

4. Regarding the matter of "urgency," defendant cites Armed Services Procurement Regulations dealing with the circumstances under which contracts may be negotiated, rather than procured through advertising. One such circumstance is when the supplies are needed because of a fire or flood. ASPR §§ 3–202.1–.2, as amended, 32 C.F.R. §§ 3.202–1, 3.202–2 (1965). We do not accept defendant's assertion that the cited regulations have relevance to the question at hand. The

considerations pertinent to the dispensing with competitive bidding are not applicable here.

5. The substance of the certificate issued by the contracting officer is contained in finding 23.

6. In John Reiner & Co. v. United States, supra, 325 F.2d at 444, 163 Ct.Cl. at 393, this court found it necessary to distinguish the following cases: Goldwasser v. United States, 325 F.2d 722, 163 Ct.Cl.

Here, as in Reiner, the Government may rely upon the termination-for-convenience clause despite the fact that the contracting officer did not invoke the clause. See also Brown & Son Electric Co. v. United States, 325 F.2d 446, 163 Ct. Cl. 465, 472 (1963); Nesbitt v. United States, supra footnote 6. Therefore, plaintiff's recovery is to be measured by the termination article.[7]

Determination of plaintiff's award can properly be accomplished in proceedings before our trial commissioner. In a case of this type, there is no requirement under the contract or under the Wunderlich Act, 68 Stat. 81 (1954), 41 U.S.C. §§ 321–322 (1958), that the recovery be computed administratively (*i. e.*, within the Department of Defense). Brown & Son Electric Co. v. United States, supra, 325 F.2d at 450, 163 Ct.Cl. at 472. Cf. Stein Bros. Mfg. Co. v. United States, 337 F.2d 861, 162 Ct.Cl. 802, 808 (1963).

In conclusion, we hold that plaintiff is entitled to recover an amount to be computed in accord with the termination-for-convenience article.[8] This amount will be determined in proceedings pursuant to Rule 47(c).

Defendant filed a counterclaim based upon the alleged illegality of plaintiff's contract. As indicated by the above opinion, there is no merit in the counterclaim and it is dismissed.

450 (1963); Klein v. United States, 285 F.2d 778, 152 Ct.Cl. 8 (1961). According to the majority opinion in Reiner, the decisions in Klein and in Goldwasser should be limited (regarding this point) to holdings that "once the Government wrongfully terminates *for default* where there has been no default, it cannot thereafter seek to avoid liability by invoking a convenience termination." (Emphasis supplied.) See Nesbitt v. United States, Ct.Cl., 345 F.2d 583 (1965); Acme Process Equipment Co. v. United States, Ct.Cl., 347 F.2d 509 (1965).

7. The termination-for-convenience article involved in Reiner was the standard (pre-1962) clause. See finding 2 in Reiner, supra, 398 of 163 Ct.Cl. Coastal's contract contained not the standard clause, but a special one. Finding 49. However, this distinction does not prevent

the rationale of Reiner from being applicable here.

8. The report of the trial commissioner contained a number of findings regarding possible awards to plaintiff, including one dealing with "termination for convenience * * *." However, the latter finding was not based upon the particular termination-costs formula set forth in Coastal's contract. Finding 49. For this reason, it will be necessary to determine, in Rule 47(c) proceedings the proper amount of termination costs.

It should be noted that, at the oral argument, defendant withdrew its exception to the "termination-for-convenience" finding. Thus, defendant admitted that, if the court were to apply this theory, plaintiff would be entitled to receive $47,536.04 (the amount arrived at by the trial commissioner).