**NOLAN BROTHERS, INCORPORATED**
v.
**The UNITED STATES.**
No. 371–67.

United States Court of Claims.
Jan. 24, 1969.

Harold F. Blasky, Washington, D. C., for plaintiff; Jack D. Eades, Dallas, Tex., attorney of record. Carlsen, Greiner & Law, Charles E. Carlsen, Minneapolis, Minn., Clark, West, Keller, Clark & Ginsberg and W. B. West, III, Dallas, Tex., of counsel.

M. Morton Weinstein, Washington, D. C., with whom was Asst. Atty. Gen., Edwin L. Weisl, Jr., for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COL-

LINS, SKELTON, and NICHOLS, Judges.

## ON DEFENDANT'S REQUEST FOR REVIEW OF THE TRIAL COMMISSIONER'S ORDER

DAVIS, Judge.

The claimant, Nolan Brothers, Incorporated, undertook in August 1962 to construct for the Corps of Engineers two rock jetties out into the Gulf of Mexico from Matagorda Peninsula in Texas. The contract price ultimately amounted to some nine million dollars. In March 1964, when about one-third of the work was done, the defendant exercised its contract right to terminate performance for the Government's convenience. The contractor did not contest this action but submitted, under the convenience-termination article, its termination claims on the total-cost basis, and efforts were made to settle the demands by negotiation. These were unsuccessful and, as the termination clause contemplated, the contracting officer then issued a unilateral determination in which he allowed the plaintiff $5,386,183 out of the $8,153,902 sought. Nolan Brothers appealed to the Corps of Engineers Board of Contract Appeals which granted only $101,315 more.

This action followed. In the second count of the petition plaintiff avers that the Board erred in several ways in refusing to increase the termination award. There is no dispute as to the method of handling this count in court. It is agreed that that part of the case will be reviewed on the basis of the administrative record under the standards of the Wunderlich Act. The parties' arguments on that phase are not now before us; they will be presented initially to the trial commissioner for his recommendation.

It is the first count of the petition which concerns us at this time. There the plaintiff alleges that the Government breached the contract by furnishing an inadequate design and defective specifications for the jetties, and also by negligently failing to apprise the contractor of certain facts. The gist of the complaint is that the design and specifications envisaged a land-based operation, to which plaintiff was accustomed, but that, after completion by another contractor of a channel through Matagorda Peninsula near the location of plaintiff's jetties, strong currents developed which made it impossible to place the jetty material by land-based equipment. The petition also says that defendant misrepresented the rise and fall of the tide, which seriously interfered with construction.

These contentions had not been presented to the Engineers Board of Contract Appeals and that body did not consider or determine the factual issues of whether the Government gave plaintiff an inadequate design or defective specifications, or withheld material facts. The trial commissioner, ruling that this first cause of action "contains allegations respecting a breach of contract by the defendant", ordered a separate *de novo* trial on that claim. Defendant has requested review by the judges of that order. We set the matter for oral argument and asked the parties to brief, in addition to the points they desired to present, the legal issues of "(1) whether it is necessary, in view of the relief plaintiff has requested under the termination-for-convenience clause, for the court to consider or decide at all the issues of inadequate design, etc., raised by the first cause of action, and (2) if a trial on these issues is necessary, whether adequate relief could be granted administratively under the Changes, Changed Conditions, Suspension of Work, Damage to Work, and Termination-for-Convenience articles of the contract (separately or together)."

We think that the answer to the first query disposes of the problem and that no trial, either judicial or administrative, need be held on the assertions of inadequate design, defective specifications, breach of warranty, misrepresenta-

tion, and withholding. of information. The reason, as we shall show, is that all the plaintiff is now entitled to is a proper award under the convenience-termination article—the claim covered by the second cause of action—and a separate claim of the kind set forth in the first cause of action no longer exists for plaintiff.

■ The crucial factor is the termination for the Government's convenience. That was an action the defendant had a full right to take under the contract which lodged in the contracting officer the fullest of discretion to end the work "in the best interests of the Government." See John Reiner & Co. v. United States, 325 F.2d 438, 442–443, 163 Ct.Cl. 381, 390 (1963), cert. denied, 377 U.S. 931, 84 S.Ct. 1332, 12 L.Ed.2d 295 (1964); Commercial Cable Co. v. United States, 170 Ct.Cl. 813, 821 (1965); Schlesinger v. United States, 390 F.2d 702, 707, 182 Ct.Cl. 571, 581 (1968). If, as plaintiff now seems to maintain, the spur to invocation of this right of termination was the defendant's realization that its plans and specifications were faulty, reliance on that motive would not be improper or an abuse of discretion.[1] The mere existence of a default by the Government would not bar convenience-termination (College Point Boat Corp. v. United States, 267 U.S. 12, 16, 45 S.Ct. 199, 69 L.Ed. 490 (1925)) and plaintiff had not treated the alleged breach as ending the entire agreement. Among the "host of variable and unspecified situations" calling for closing of the work under a still-existing contract (John Reiner & Co. v. United States, supra, 325 F.2d at 442, 163 Ct.Cl. at 390) it is entirely reasonable to include a post-contract recognition that the job is impossible or too difficult to perform or too costly for the Government if pushed through to its conclusion. That would be a characteristic case for a convenience-termination. The defendant could properly wish to cut unnecessary losses as early as possible and to consider what drastic changes might be needed in its plans.[2] Certainly the Government would not be compelled to see the contract work through to the bitter end, no matter what the cost or the trouble or the waste in resources. Rather, in that situation it would be as much in the Government's "best interests" to use the termination clause as we have held it to be to avoid a conflict with the Comptroller General (e. g. John Reiner & Co. v. United States, supra) or with Congress (Schlesinger v. United States, supra) or in order to employ a contractor with greater production facilities (Nesbitt v. United States, 345 F.2d 583, 170 Ct.Cl. 666 (1965), cert. denied, 383 U.S. 926, 86 S.Ct. 931, 15 L.Ed.2d 846 (1966)).

■ The contractor's protection on a convenience-termination is that he gets full reimbursement of his costs, together with a measure of profit. He becomes entitled to the "cost of the work performed and the cost of settling subcontract claims—plus 2% of the cost of materials and articles delivered to the site but not incorporated in the work and 8% of the balance of the cost (with the total profit not to exceed 6% of the whole cost of the work), unless the contractor would have sustained a loss on the entire contract in which event no profit is to be allowed." G. L. Christian and Associates v. United States, 312 F. 2d 418, 427, 160 Ct.Cl. 1, 17, rehearing denied, 320 F.2d 345, 160 Ct.Cl. 58, cert. denied, 375 U.S. 954, 84 S.Ct. 444, 11 L. Ed.2d 314 (1963). The only substantial difference between the sum calculated under that standard and the amount recoverable in a common law action for contract breach is the noninclusion in the former of anticipated but unearned profits. See G. L. Christian and Associates v. United States, supra, 312 F.2d at 423–424, 426–427, 160 Ct.Cl. at 11, 15–17; J. W. Bateson Co., Inc. v. United States, 162 Ct.Cl. 566, 569–570 (1963);

---

1. Plaintiff never challenged administratively the defendant's use of its reserved right to terminate for the Government's convenience.

2. In the present instance we understand that after the termination the defendant changed from a land-based operation to a water-based one.

Nesbitt v. United States, supra, 345 F.2d at 586, 170 Ct.Cl. at 671.[3]

Accordingly, the significant role of the first cause of action in plaintiff's petition is to lay claim to the unearned profits which plaintiff cannot recover under the termination clause. All else is subsumed within the second cause of action testing the administrative award under that article.

■ Since, however, the termination here was lawfully effected—as we have just held—it follows that plaintiff is not entitled to any unearned gain even though it might have recovered that component of damages if the convenience-termination were put aside. By agreeing to incorporation of the termination provision, the contractor necessarily gives up this aspect of the common law formula whenever the termination article becomes operative. The contractor acquiesces in the substitution of a contractual rule under which profit is allowed only on the work actually done.

■ This cannot be the result, plaintiff says, where the Government has breached the contract—it cannot escape the normal common law consequences of its wrongful action by thereafter terminating the contract for its own convenience.[4] The answer, we think, is that the convenience article was precisely intended to allow the Government to avoid the consequence that it pay unearned profits. See G. L. Christian and Associates v. United States, supra, 312 F.2d at 426–427, 160 Ct.Cl. at 15–16. In the cases in this area that have gone before, the Government's action always

amounted to a breach, as seen at the time, but nevertheless it was held that the termination clause could later be invoked and the recovery controlled by the termination formula, i. e., no unearned profits. In College Point Boat Corp. v. United States, supra 267 U.S. at 15, 45 S.Ct. 199, the Government simply told the contractor to stop work, and the Court characterized this as "an anticipatory breach." The right to cancel under the World War I statute (which was the equivalent of the convenience-termination clause) "was asserted later, in court" and "operated to curtail the damages recoverable." Id. at 16, 45 S.Ct. at 199, 201. In John Reiner & Co. v. United States, supra, 325 F.2d 438, 163 Ct.Cl. 381, the Government cancelled the contract outright (without any payment at all) because the General Accounting Office had said the award was improper; we held the award legal and the cancellation baseless but that the termination-clause measure-of-recovery applied; if that article were absent or inapplicable, the defendant's action would have been treated exactly as a common law breach. This was also true in Brown & Son Electric Co. v. United States, 325 F.2d 446, 163 Ct.Cl. 465 (1963); Coastal Cargo Co., Inc. v. United States, 351 F.2d 1004, 173 Ct.Cl. 259 (1965); and Warren Bros. Roads Co. v. United States, 355 F.2d 612, 173 Ct.Cl. 714 (1965). In Nesbitt v. United States, supra, 345 F.2d 583, 170 Ct.Cl. 666 we assumed that the defendant had breached its obligation to give all of its orders for the contract title work to Mr. Nesbitt but nevertheless we refused to award him the unearned profit he

3. Plaintiff points to alleged differences in the computation of the cost of the work performed but these distinctions are either non-existent or too slight to be taken into account or variations in form only. In the past we have found little substantial difference in the calculation of actual costs whether the case be governed by the convenience-termination article, an "equitable adjustment" under some other contract clause, or the common law standard. See, e. g., G. L. Christian and Associates v. United States, supra, 312 F. 2d at 427, 160 Ct.Cl. at 17–18; John

Reiner & Co. v. United States, supra 325 F.2d at 444, 163 Ct.Cl. at 393.

4. In this discussion we assume *arguendo* that plaintiff's first cause of action states a "breach" claim rather than one redressable under a contract clause. If, on the other hand, the demand were cognizable under any of the clauses mentioned in the second question we put to the parties, supra (or any combination of those articles), the plaintiff's "equitable adjustment" or award would clearly not encompass expected but unearned profits.

would have made if all of the Government's orders had been routed to him.

No proper distinction can be made, in the circumstances here, between the type of breach involved in those cases (complete stoppage of the work) and the breach alleged in plaintiff's petition (defective design and plans, and misrepresentations). This is not a case in which the contractor struggled to perform under defective plans and specifications and then had to give up the job, finding his task impossible, or finally managed to finish the work at inordinate cost.[5] The defendant stopped the work and Nolan Brothers did not have to perform further, exactly as in the prior cases. The situation is the same. There is no more reason to allow prospective profits here than in those instances. Indeed, it would create anomalies to hold that plaintiff could recover such profits. If the Government, as it might have done, had terminated the contract for default because plaintiff lagged (on account of the defective specifications) and the default was found excusable (as due to the defendant's own fault), the termination would be converted, under the default clause, into a convenience-termination, and recovery of unearned profits would be barred.[6] Plaintiff is surely not entitled to a greater recovery because the Government refrained from starting the default mechanism and used a convenience-termination instead.

■ Finally, we point out that, even if what we have said up to now were erroneous, "the plaintiff could not recover anticipated but unearned profits without clear and direct proof that it would have made such gains. United States v. Penn Foundry & Mfg. Co., Inc., 337 U.S. 198, 69 S.Ct. 1009, 93 L.Ed. 1308 (1949); United States v. Behan, 110 U.S. 338, 344, 4 S.Ct. 81, 28 L.Ed. 168 (1884). That type of proof is unavailable here because the plaintiff cannot show that [in any event] its contract would have been allowed to continue to completion. A standard termination clause was ever-ready for use * * *" and plaintiff is necessarily unable to prove that that device would not have been invoked for extraneous reasons unrelated to the faulty design.[7]

■ The result is that the court need never consider the allegations of breach of warranty and of misrepresentation, and that plaintiff is not entitled to any trial on its first cause of action since it is immaterial whether or not those assertions are true. The trial commissioner's order directing a *de novo* trial must therefore be reversed. The defendant has not moved to dismiss the first cause of action but that claim is now a vermiform appendix without any function. It is better to excise it at once so as to prevent its infecting the remainder of the litigation. In these circumstances we may do so even though the Government has not asked for such relief. Cf. Aircraft Assoc. & Mfg. Co., Inc. v. United States, 357 F.2d 373, 380, 174 Ct. Cl. 886, 898–99 (1966).

The trial commissioner's order directing a *de novo* trial on the first cause of action is reversed and that part of the petition is dismissed. The case is returned to the trial commissioner for further proceedings on the second cause of action.

5. Nor is this a case in which the contractor treats a government breach of warranty as ending the entire contractual relationship before the defendant attempts to exercise its right of termination. The plaintiff has always considered the contract to be a subsisting one, and certainly so dealt with it at all times up to the termination.

6. Under the newer form of default article, though not under the older one included in this contract, the same would be true even if it were found that plaintiff was not in technical or excusable default. See Schlesinger v. United States, supra, 390 F.2d at 710 n. 11, 182 Ct.Cl. at 585 n. 11.

7. John Reiner & Co. v. United States, supra, 325 F.2d at 444, 163 Ct.Cl. at 393–394.