"Both defendant and plaintiff move for summary judgment in this contract case, which has already been the subject of an opinion of the Armed Services Board of Contract Appeals (ASBCA), 75-1 BCA ¶ 11,150, and an order of our court, 210 Ct. Cl. 714 (1976). We deny both motions and remand for trial.
"In January 1970, plaintiff entered into two contracts with the Army, the one to supply armored-tank engine components, and the other to obtain access to sufficient Government-owned tools and facilities to perform the supply contract. Shortly after the contracts were awarded, however, the General Services Administration, which apparently controlled the Government-owned plant and equipment made available to plaintiff, sold that facility to a subsidiary of Teledyne Corporation, which had been, until these contracts with plaintiff, the Government’s sole source for the engine components involved here. Defendant failed to reserve for plaintiff the right to continue using the *903 facility after sale, and Teledyne’s subsidiary promptly denied plaintiff access to the machinery it needed to perform the contract. For several weeks, plaintiff and defendant discussed extending the contract delivery schedule, allowing plaintiff an equitable increase in the contract price, and securing substitute equipment with which to complete the contract, but agreement was beyond the parties’ reach. On July 30, 1971, defendant terminated the contract for its convenience, and negotiations between the parties turned toward arranging an acceptable settlement of the contract. Eventually, the parties executed the bilateral termination settlement, which the ASBCA held was unreasonably low in the amount allowed plaintiff. The Board further found that plaintiff accepted it under duress as a result of improper economic pressure, accentuated by defendant’s unlawful acts. It imputed bad faith in general to defendant’s conduct following the termination. The Board increased plaintiffs termination settlement, but could not, consistent with the termination clause of the contract, award plaintiff any amount representing unearned but anticipated profits on the whole contract.
"Plaintiff now seeks anticipated profits in this suit, brought directly to this court and not based upon a Wunderlich Act challenge to the Board’s decision or findings. Plaintiff alleges a breach of contract, the essence of which is that defendant’s sale of necessary production facilities without protecting its contractor rendered the contract impossible to perform. Plaintiffs briefs also describe various other acts by defendant prior to terminating the contract that are said to indicate defendant’s bad faith.
"There may be a sufficient foundation for our de novo jurisdiction in this case if plaintiff proves only a breach of contract, not remediable by change order. The trial judge may find that defendant’s denying plaintiff its means of production, constituted a cardinal change of the work required under the contract, Edward R. Marden Corp. v. United States, 194 Ct. Cl. 799, 442 F.2d 364 (1971), and placed defendant in breach. Once plaintiff succeeds in invoking our jurisdiction, though, it will need to show more than just a breach before it can add to what the Board *904 awarded it as a termination settlement, because the Government may no less limit its liabilities through the termination for convenience clause even if it has already breached the contract. See College Point Boat Corp. v. United States, 267 U.S. 12 (1925). The very purpose of the termination clause is to enable the Government to avoid paying what damages the common law would prescribe for a contract breach. Nolan Bros. v. United States, 186 Ct. Cl. 602, 608, 405 F.2d 1250, citing G. L. Christian & Assocs. v. United States, 160 Ct. Cl. 1, 312 F.2d 418, cert. denied, 375 U.S. 954 (1963). The clause operates to bring within the contract disputes that would otherwise have been without. In an ordinary case, we would expect that the Board’s award under the disputes process would be a contractor’s full measure of recovery.
"But we have recognized a doctrine that restricts the Government’s resort to the termination clause to instances where the Government acts in good faith, see John Reiner & Co. v. United States, 163 Ct. Cl. 381, 390, 325 F.2d 438, 442 (1963), cert. denied 377 U.S. 931 (1964), and bears no malice against the contractor, see Colonial Metals Co. v. United States, 204 Ct. Cl. 320, 331, 494 F.2d 1355, 1361 (1974). However sweeping its prerogative to declare a contract terminated for convenience, the Government cannot insulate itself from common law liability if it abuses its discretion or acts in bad faith. Inasmuch as this appears to be plaintiffs theory of recovery, we disagree with defendant that plaintiff fails to present a triable issue of fact, and we deny defendant’s motion.
"The facts in this record are not of a nature to fit this case for disposition upon summary judgment. As we see it, 'plaintiffs recovery depends on its ability to prove the Government’s bad faith. The Board’s decision did find the Government guilty of bad faith, but only after it terminated the contract, and the Board made no such finding regarding the preceding months to which plaintiff now directs our attention. The Board did not need to explore this far back because its sole concern was the termination settlement. Its remedy, appropriately, was to restore to plaintiff the full measure of what it would have received to settle the contract had defendant negotiated fairly. The *905 Board’s carefully documented fact recitals tell a horrendous story, and suffice by themselves to tender a triable issue as to when bad faith began to control defendant’s acts. Defendant’s affidavits are not sufficient refutation for summary judgment purposes in face of the Board findings. The Board’s findings as to the termination and events leading up to it, thus are inferentially relevant to our inquiry, and therefore admissible into evidence now, see National Factors, Inc. v. United States, 204 Ct. Cl. 98, 492 F.2d 1383 (1974), but they are not dispositive. The record leaves open factual questions that are essential for our decision, and both parties have the right and duty in a breach case to present the evidence in full.
"Our need for a trial in this case is clear, to develop the following issues, at least, in addition to whatever else the trial judge finds would aid our resolving this case. First, the trial judge should determine whether the Government’s sale of facilities was, under all the circumstances, a cardinal change of the contract under Edward R. Marden Corp., supra, that constitutes the Government’s breach of the contract. Our jurisdiction depends upon finding some breach, but unless the facilities sale generated a cardinal change, for which a contractor could not be compensated amply with money in the form of an equitable adjustment to the contract price, the facilities sale loses its significance as a breach. Second, assuming the trial judge finds that defendant breached the contract, he should determine' whether it thereafter invoked the termination clause in bad faith, so that it is prevented from benefitting from the limitation of liability provided there. In this regard, the parties may find instructive Commissioner W. Ney Evans’ recommended opinion in Weiss v. United States, 155 Ct. Cl. 825 (1961), in evaluating the quality of evidence that plaintiff must present in order to establish the Government’s bad faith. In Weiss, Commissioner Evans found the evidence sufficient to establish the Government’s bad faith prima facie, which was as far as he needed to go to resolve the dispute over discovery then before him. The case was eventually settled out of court and before trial, so ultimate findings were never rendered. Nor was the commissioner’s opinion ever adopted by the court, although published *906 officially. In this light, plaintiff here should harbor no illusions that the task of overcoming the presumption that Government officials perform their duty in good faith is less than burdensome. Kalvar Corp. v. United States, 211 Ct. Cl. 192, 543 F.2d 1298 (1976); Librach v. United States, 147 Ct. Cl. 605 (1959).
"Accordingly, it is ordered that defendant’s motion and plaintiffs cross-motion for summary judgment are denied, and the case remanded for trial consistent with this order.”
See report of opinion of the court filed January 25, 1978, ante at 406.