"This case for breach of contract comes before the court on defendant’s motion for summary judgment. On the basis of the briefs and other submissions, without oral argument,[1] we grant summary judgment to the defendant.
"Plaintiff is a contractor which submitted a bid to the U.S. Postal Service, in the amount of $389,000.00, in response to a solicitation for the rehabilitation of the third floor of the General Post Office in Philadelphia, Pennsylvania. Upon protest by the plaintiff, the two lower bids were declared nonresponsive. The lowest bid of $333,000.00 by I. Lazar & Sons, Inc., lacked a list of proposed subcontractors required by the invitation for bids; the second lowest bid of $376,361.00 by Fluidics, Inc., lacked both the list of proposed subcontractors and the required Philadelphia Plan EEO Goals Certificate. The plaintiff was notified orally on December 15, 1975 by the contracting officer of the award of the contract and received written notice on December 17, 1975.
"On that same day the contracting officer was instructed by his superiors to reject all the responsive bids as unreasonable, since the lowest responsive bid (plaintiffs) was 13% above the Postal Service estimate of $343,147.00
*919 for the project. That afternoon the contracting officer, not realizing that a contract had already been consummated, sent plaintiff a telegram stating that the contract documents should be disregarded since the solicitation had been cancelled and was being readvertised. On December 23, 1975 the plaintiff sent a telegram to the contracting officer protesting the proposed cancellation of the solicitation and the readvertisement of the contract on the ground that a contract had already been awarded to the plaintiff. On that same day the contracting officer sent plaintiff a formal letter terminating the plaintiffs contract for the convenience of the Postal Service.[2] The effective date of the contract termination was December 17, 1975, the same day as the cancellation of the solicitation.
"The plaintiff protested the decision to cancel and readvertise. The Associate General Counsel of the Postal Service decided that the notice of the award created a binding contract, but that the contract was properly terminated. James E. McFadden, Inc., P.S. Protest No. 75-91 (January 13, 1976). A second solicitation was made; the specifications were virtually identical, except that the submission of a list of proposed subcontractors yras not required. I. Lazar & Sons, Inc., was the low bidder and was awarded the contract for $344,000.00.
"The plaintiff filed its petition here on October 27, 1976, alleging that the entire termination action was an abuse of discretion and done in bad faith. The Government has moved for summary judgment, asserting that on the undisputed facts the plaintiff has no case. Plaintiff urges that we remand to the Trial Division for a trial.
"We see no need for a trial on the questions raised by plaintiff. One issue is whether the contracting officer abdicated his discretionary authority by following the instructions of his superiors. The defendant in its motion for summary judgment argued that there was no such abdication by the contracting officer, but that upon being *920 informed that the Postal Service did not wish to spend so much on the work, the contracting officer exercised his own discretion in deciding that it would be to the best interests of the Government to terminate the contract. However, the defendant, in its Reply to Plaintiffs Answer [Opposition] to Defendant’s Motion for Summary Judgment, takes a somewhat different tack and admits the 'substance’ of plaintiffs allegation that the contract had been cancelled by the contracting officer 'on direction from higher authority that the McFadden bid exceeded the government estimate, which was $343,147.00, by more than ten percent.’ The telegram from Washington to the Philadelphia office reads in pertinent part:
To confirm our telecon this date you will reject all bids for IFB No. R-76-001 for demolition and rehabilitation. Rejection is to be based on PCM 2-404.1 B-(VI) 'All otherwise acceptable bids received are at unreasonable prices’. The government estimate was $343,147 for this work and the lowest responsible bid was $389,000. An increase of 13% above the government estimate.
You are further requested to immediately readvertise the project for a shorter bid period deleting the requirement for a subcontractor list in its entirety. The defendant’s contention (in its Reply) is that, although the contracting officer was thus told to reject all bids and readvertise, he exercised his own discretion in deciding to implement that order by terminating the contract for convenience. We need not, however, determine whether that position is sound or whether the superior’s language was so peremptory as necessarily to imply that the contracting officer did in fact abdicate his discretionary role with respect to the termination (or that the defendant has made such a concession). Cf. Pacific Architects & Engineers Inc. v. United States, 203 Ct. Cl. 499, 518-20, 491 F.2d 734, 745-46 (1974). Even if it were to be assumed arguendo that the contracting officer did abdicate his discretionary authority and terminate the contract under orders from his superiors, the plaintiff would not be entitled to the anticipatory profits sought here, but only to the measure of relief provided under a termination for *921 convenience. In Schlesinger v. United States, 182 Ct. Cl. 571, 390 F.2d 702 (1968), the Navy under pressure from Congress terminated the plaintiffs contract for default. The court held that the default termination was invalid because the Navy had abdicated its discretionary authority. However, because of the presence of the termination-for-convenience clause the court did not treat such an improper termination as a breach of contract calling for anticipatory damages. Schlesinger, supra, 182 Ct. Cl. at 584-85, 390 F.2d at 709-10; John Reiner & Co. v. United States, 163 Ct. Cl. 381, 389-92, 325 F.2d 438, 442-44 (1963), cert. denied, 377 U.S. 931 (1964). Given the presence of the termination-for-convenience clause the contract could have been terminated at any time; as a result, the plaintiff would be unable to provide the 'clear and direct proof that it would have made the claimed anticipatory profits, which is necessary in order to recover such profits. Nolan Bros., Inc. v. United States, 186 Ct. Cl. 602, 610, 405 F.2d 1250, 1255 (1969); John Reiner & Co., supra, 163 Ct. Cl. at 393-94, 325 F.2d at 444-45.
"Aside from its argument on abdication of discretionary authority, the plaintiff contends vigorously that the contracting officer acted in bad faith, and points to the meanings of 'commercial reasonableness’ and 'good faith’ in dealings between private parties. But it is clear from the facts that neither the contracting officer nor his superiors acted in 'bad faith,’ as defined by this court in connection with the actions of government officials on termination. In Kalvar Corp. v. United States, 211 Ct. Cl. 192, 199, 543 F.2d 1298, 1302 (1976), petition for cert. filed, 45 U.S.L.W. 3808 (June 6, 1977) (No. 76-1732), the court examined in detail the nature of such 'bad faith’ and equated it with a 'specific intent to injure the plaintiff.’ The plaintiff in its petition and its briefs alleges no facts from which such intent, which must be shown with 'well-nigh irrefragable proof,’ could be inferred. Knotts v. United States, 128 Ct. Cl. 489, 492, 121 F. Supp. 630, 631 (1954). In Colonial Metals Co. v. United States, 204 Ct. Cl. 320, 331, 494 F.2d 1355, 1361 (1974) it was held that the contracting officer, who had terminated the contract in order to purchase a supply of copper at a lower price elsewhere, did not act in bad faith *922 even though he knew at the time of the award of the original contract that the copper was available at a lower price. The motivation of the contracting officer’s superiors in the instant case was identical, a desire to obtain a lower price. Even if we assume that the contracting officer abdicated his own discretion in following his superiors’ instructions to cancel the solicitation, on the facts of the case there was no abuse of discretion by the Postal Service, tantamount to "bad faith.” In the absence of malicious intent or animus toward the plaintiff on the part of the government officials, the plaintiff is entitled only to the compensation provided under the termination-for-convenience clause.[3]
"it is therefore ordered and concluded that the defendant’s motion for summary judgment is granted on plaintiffs claim that the contract was terminated because of bad faith and that the plaintiff is not entitled to recovery other than that provided in its convenience-termination clause. The case is dismissed, without prejudice to plaintiffs right to file another petition at a later date seeking review of the administrative determination as to the amount of termination costs to which it is entitled under the terms of the contract.”

 Plaintiff has specifically requested oral argument but we do not consider it necessary or appropriate.

 The termination provision (Clause 40B of PS Form 7391 (May 1975)) provides in part that 'The performance of work under this contract may be terminated by the Postal Service in accordance with this clause in whole, or from time to time in part, whenever the Contracting Officer shall determine that such termination is in the best interest of the Postal Service.’

 The plaintiff has furnished nothing from which there could be inferred any malice or animus against it, or any governmental intent to injure it. It is absolutely plain that the Postal Service’s desire was simply to save money if possible, by having the contract readvertised. In contrast, see the order of September 30, 1977 in Allied Materials & Equipment Inc. v. United States, Ct. Cl. No. 342-75, in which the court found sufficient possibility of such bad faith, in the facts already before it, to order a trial of the issue, ante at 902.