DESCON SYSTEM LTD.

v.

The UNITED STATES.

No. 329–79C.

United States Claims Court.

Oct. 11, 1984.

Arnold Spellun, New York City, for plaintiff; Lacher, Spellun & Lesser, New York City, of counsel.

R. Anthony McCann, Washington, D.C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D.C., for defendant; Frances L. Nunn, Washington, D.C., of counsel.

## OPINION

MEROW, Judge:

This case comes before the court on cross motions for summary judgment. Plaintiff, Descon Systems Ltd. (Descon), seeks $21,000,000 in damages for actions taken by the Department of Housing and Urban Development (HUD).

### Facts

Plaintiff, a Canadian corporation, was a participant in Operation Breakthrough (Breakthrough), a program managed by HUD. The program was designed to encourage the private development of factory produced building systems to meet the nation's housing needs.

There were three phases to Breakthrough. Each phase involved separate contracts. It was recognized that phase I and phase II would not yield substantial profits. However, profits might be realized in phase III. Phase I involved development and refinement of design systems. Plaintiff was one of 22 contractors selected to participate in phase I.

Phase II involved the manufacture and construction of prototypes. HUD contracted with prototype site developers (PSD) for the manufacture and erection of several hundred units of the phase I designs at various construction sites throughout the country. The PSD's, in turn, subcontracted the construction and management at the various sites to selected phase I contractors who were designated as Housing System Producers (HSP). Plaintiff was an HSP subcontractor for a construction site in Jersey City, New Jersey, and St. Louis, Missouri.

Phase III of Breakthrough was planned to encourage the development of the successful phase II housing systems by making available to the HSP and their licensees construction subsidies pursuant to section 236 of the National Housing Act. Under the section 236 set aside, a state or local authority, if it agreed to use the Breakthrough housing system, could receive section 236 subsidies outside of the government's normal allocation limitations for such subsidies. Phase III contracts were negotiated and entered into between general contractors and local housing authorities or local project sponsors. Descon subsidiaries, D/C Systems of New England, Inc. and Descon Concordia Corporation of California, were selected to participate as subcontractors in phase III.

The phase II contracts contained standard Termination for Convenience and Termination for Default clauses as well as a unique provision entitled "Government Intervention Clause" (intervention clause). This clause was included because of the experimental nature of Breakthrough, and because of the government's concern to assure the completion of the project, as well as to protect government funds. The clause provided that the government could declare an "event" if the contractor, PSD, or the subcontractor, HSP, "at any time is prevented or fails or is unable for any reason to perform his contractual obligations (including, but not limited to, subcontracting, labor, fair housing and equal opportunity)". If an "event" was declared the government could intervene, and, without notice to any of the parties involved, could take possession or title to all or any part of the project site. During phase II

negotiations Descon expressed concern over the intervention clause. To allay plaintiff's fear, there was an exchange of letters, guaranteeing the manner in which the clause would be used.

During the course of plaintiff's phase II subcontracts, Descon experienced a number of difficulties which ultimately resulted in HUD intervention pursuant to the intervention clause. Reports of Descon's difficulties were published in the Canadian press. After unsuccessful negotiations, HUD default terminated plaintiff on its phase II subcontracts. Descon appealed to the Housing and Urban Development Board of Contract Appeals (HUDBCA).[1]

The first count of Descon's four-count complaint to the HUDBCA was a $350,000 claim for increased general and administrative expenses. In count II, Descon alleged that HUD wrongfully default terminated the subcontracts and sought $900,000 for all costs and liabilities incurred through the end of Descon's work on the subcontracts and a reasonable profit pursuant to the Termination for Convenience clause. In count III, Descon claimed $5,000,000, alleging that a HUD source released false and defamatory information to the Canadian press which resulted in a loss of potential investors and business opportunities. Descon sought $20,000,000 in count IV alleging that HUD caused Descon's loss of existing investment in its business organization and future profits from volume production in phase III by wrongfully default terminating the phase II subcontracts and by wrongfully terminating Descon's participation in phase III.

In the first of two decisions, *Descon Systems Ltd.*, HUDBCA Nos. 74–1, 75–2; 75–2 BCA ¶ 11,473 (1975), the board held that Descon's claims in count I for increased general and administrative costs were intricately related to the claims in count II challenging the propriety of the termination for default and should be considered together on the merits. HUDBCA also ruled that it had no jurisdiction over count

II, a defamation action sounding in tort, and count IV, a breach of contract claim for future profits.

In *Descon Systems Ltd.*, HUDBCA Nos. 74–1, 74–2; 76–2 BCA ¶ 12,178 (1976), the board determined that Descon was not in default when HUD intervened pursuant to the intervention clause, and that during the intervention Descon could not be default terminated. The board converted the default terminations into convenience terminations and returned Descon's claims to the respective PSD's for negotiation of settlements.

The settlement agreement entered into by Descon provides, in pertinent part:

WHEREAS, Descon and Boeing have in good faith endeavored to negotiate a settlement of any and all of Descon's claims under the Subcontracts in connection with its participation in the Operation Breakthrough Program at said Breakthrough sites, exclusive only of the following:

(i) alleged defamation claims and breach of contract claims (including, without limitation, alleged claims with respect to Phase III of Operation Breakthrough) as to which the HUDBCA previously ruled it had no jurisdiction and

(ii) claims under the clause of the Subcontracts providing indemnification for "any and all liability whatsoever suffered by the HSP (Descon) pursuant to the actions of HUD," except that said liability shall not include any and all claims arising out of or related to Descon's assignments of any rights, titles or interests under the Subcontracts to the Banks (including the subject matter of the July 28, 1977 letter from The Chase Manhattan Bank, N.A. to Summit).

Plaintiff subsequently brought this action for damages resulting from the following: defendant's failure to pay plaintiff and defendant's diversion of said payments

---

1. For a full narration of the events preceding the default termination, *see Descon Systems Ltd.*, HUDBCA Nos. 74–1, 74–1; 76–2 BCA ¶ 12,178 (1976).

to lower tier subcontractors during intervention of the phase II contracts; defendant's failure to process plaintiff's phase II contract claims; defendant's failure to process plaintiff's participation in phase III during government intervention in phase II; defendant's wrongful attempt to shift responsibility for performance to Descon during intervention; defendant's dissemination of press releases concerning plaintiff's phase II difficulties; defendant's wrongful demand for performance guarantees for phase II; defendant's failure to pay retentions due plaintiff on phase II; and defendant's wrongful proposed debarment and suspension of plaintiff.

Defendant has moved for summary judgment. Plaintiff opposes the motion and has cross moved for summary judgment. For the reasons stated below, defendant's motion is granted.

## Discussion

### 1. *Phase II*

a. Damages for pre-termination breaches

Descon alleges it is entitled to compensation for breaches of contract occurring prior to the default termination. Specifically, it seeks recovery for defendant's diversion of funds from the plaintiff to lower tier subcontractors during government intervention. Plaintiff seeks payment of claims submitted in June 1973 for additional costs as well as compensation for defendant's demand for performance and payment guarantees in the Jersey City contract. Finally, plaintiff seeks remittance of funds held by defendant pursuant to the St. Louis contract.

 In support of its position plaintiff cites *Klein v. United States,* 152 Ct.Cl. 8, 285 F.2d 778 (1961) and argues that "absent a specific exculpatory clause, the government is liable for all damages for breach." The new default termination clause effectively overruled *Klein. See General Builders Supply v. United States,* 187 Ct.Cl. 477, 409 F.2d 246 (1969). It is well settled that because a contractor recovers all its allowable incurred costs

plus a profit on the costs, a settlement agreement entered into pursuant to the termination for convenience clause necessarily compensates for any breaches occurring prior to the termination. *R–D Mounts, Inc. v. United States,* 2 Cl.Ct. 320, 323 (1983); *William Green Construction Co. v. United States,* 201 Ct.Cl. 616, 622, 477 F.2d 930, 934 (1973), *cert. denied* 417 U.S. 909, 94 S.Ct. 2606, 41 L.Ed.2d 213 (1974); *see also, Nolan Brothers, Inc. v. United States,* 186 Ct.Cl. 602, 608, 405 F.2d 1250, 1254 (1969). The termination agreement covered all the relief to which plaintiff was entitled under the contracts' termination for convenience provisions (*i.e.,* plaintiff's incurred costs) and excepted only those breaches which the board did not take jurisdiction. *See Librach v. United States,* 147 Ct.Cl. 605 (1959). Therefore, plaintiff's recovery for the above claims is barred by the settlement agreement.

### b. Bad faith

 Plaintiff also argues its recovery is not limited by the termination settlement agreement because the government acted in bad faith. *See National Factors, Inc. v. United States,* 204 Ct.Cl. 98, 492 F.2d 1383 (1974). Plaintiff's brief is less than clear on this point. It does not refer to specific acts of misconduct to support its allegations. A strong showing is required to establish bad faith. In the cases where the court has considered allegations of bad faith, the necessary "irrefragable proof" has been equated with evidence of some *specific intent to injure the plaintiff. Kalvar Corp. v. United States,* 211 Ct.Cl. 192, 198–99, 543 F.2d 1298, 1302 (1976) (emphasis supplied). Plaintiff has failed to allege instances to support a viable bad faith claim regarding the phase II contracts. *See Kalvar, id.*

### 2. *Phase III*

Plaintiff also seeks damages regarding breach of Phase III contracts. From the facts presented, it is unclear whether Descon or Descon's affiliates entered into a

phase III contract. However, even if a contract exists, plaintiff's claims fail.

 There is no privity of contract between Descon and HUD. From plaintiff's supporting documents, it appears that if there were a contract, it was between the representatives of individual markets, such as sponsors, private developers, or housing authorities, and the contractors. Defendant merely provided funds for the housing developments. It is well settled that this is insufficient to establish privity of contract. *Cofan Associates, Inc. v. United States*, 4 Cl.Ct. 85 (1983); *Aetna Casualty and Surety Co. v. United States*, 228 Ct.Cl. 146, 655 F.2d 1047 (1981); *D.R. Smalley & Sons v. United States*, 178 Ct.Cl. 593, 372 F.2d 505, *cert. denied* 389 U.S. 835, 88 S.Ct. 45, 19 L.Ed.2d 97 (1967). In addition, in the documents set forth by plaintiff, it appears Descon would function primarily as a subcontractor in phase III. Plaintiff is therefore one step further removed from the defendant. *See United States v. Johnson Controls, Inc.*, 713 F.2d 1541, 1550 (Fed.Cir.1983).

Plaintiff alleges that phase III was the inducement for participation in the first two phases and that defendant's alleged bad faith actions in phase II adversely affected plaintiff's participation in phase III. Viewed in this way, it could be argued that the earlier contracts are analogous to pre-bid preparation activity. However, even if the three phases of Breakthrough are considered as so interrelated, plaintiff cannot recover. The settlement agreement compensated plaintiff for phase II damages. In this sense, plaintiff has been compensated for its "bid preparation" costs. Notwithstanding any bad faith allegations, additional compensation, whether characterized as lost profits or consequential damages, is barred. *Keco Industries, Inc. v. United States*, 203 Ct.Cl. 566, 492 F.2d 1200 (1974).

*Conclusion*

For the above-stated reasons, defendant's motion for summary judgment is granted. IT IS ORDERED that a final judgment be entered dismissing plaintiff's complaint.