**DAIRY SALES CORPORATION**

v.

**The UNITED STATES.**

No. 31–78.

United States Court of Claims.

Feb. 21, 1979.

Michael J. Rutenberg, Philadelphia, Pa., attorney of record, for plaintiff.

David S. Eisenberg, Washington, D.C., with whom was Asst. Atty. Gen., Barbara Allen Babcock, Washington, D.C., for defendant.

Before FRIEDMAN, Chief Judge, and DAVIS and SMITH, Judges.

## OPINION

PER CURIAM:

This case comes before the court on defendant's motion, filed January 10, 1979, requesting that the court adopt the recommended decision of Trial Judge Lloyd Fletcher, filed November 28, 1978, pursuant to Rule 166(c) on the parties' cross-motions for summary judgment, as the basis for its judgment in this case, neither party having requested review thereof by the court and the time for so requesting pursuant to the Rules of the court having expired. Upon consideration thereof, without oral argument, since the court agrees with the recommended decision, as hereinafter set forth, it hereby grants defendant's said motion and affirms and adopts the recommended decision as the basis for its judgment in this case. Therefore, it is concluded that plaintiff is not entitled to recover and plaintiff's motion for summary judgment is denied, defendant's cross-motion for summary judgment is granted and plaintiff's petition is dismissed.

## OPINION OF TRIAL JUDGE

FLETCHER, Trial Judge:

This contract dispute involves an appeal by plaintiff, Dairy Sales Corporation, from an decision of the Armed Services Board of Contract Appeals, ASBCA No. 20193, 75–2 BCA ¶ 11,613. The Board denied all but $900 of plaintiff's claims aggregating $32,-824 arising out of the Government's partial termination for convenience of a contract for butter printing services. By cross-motions for summary judgment, the parties have asked the court to review the Board's decision in accordance with the well-known standards of the Wunderlich Act, 41 U.S.C. §§ 321–22.

The terminated contract between the Government and the plaintiff was entered into on June 7, 1972. The Defense Personnel Support Center, Subsistence Regional HQ, Chicago, of the Defense Supply Agency had issued a solicitation for bids for a "REQUIREMENTS CONTRACT, FURNISHING BUTTER PRINTING AND MATERIALS (TO RECEIVE, STORE, PRINT, PACKAGE, PACK AND SHIP GOVERNMENT–OWNED BUTTER)". The solicitation listed 25 items for bids which were divided by geographic region and subdivided by size and type of cut.

The contracting officer initially determined that by reason of its location, the plaintiff probably would be the low bidder. However, it was subsequently determined that another bidder, Bon Ton Foods, Inc., was so located that it could perform for the same cost as plaintiff. A drawing by lot then resulted in an award to plaintiff for six of the eight items listed in the Northeast area.

However, after the contract was entered into with plaintiff, an error in computing shipping cost was discovered with respect to one of the items, Item 0003, which, when corrected, showed the award of that item actually should have gone to Bon Ton. Consequently, the Government canceled most of Item 0003 in the initial contract with plaintiff and awarded that portion to Bon Ton. Following plaintiff's protest of the partial cancellation, the Comptroller General of the United States in Decision B–176393 recommended that the partial cancellation of the contract be changed to a partial termination for the convenience of the Government. Whereupon on October 31, 1972, the contracting officer amended the contract with the plaintiff to reflect the Comptroller's decision by changing the cancellation of 2,020,000 pounds of Item 0003 to partial termination pursuant to paragraph 26 of the General Provisions of the contract. Under paragraph 26, the parties had agreed that the Government could terminate the

contract in whole or in part "whenever the Contracting Officer shall determine that such termination is in the best interest of the Government . . . ."

The extent of the damages allowable to the contractor under a termination for the convenience of the Government is also governed by paragraph 26. That paragraph provides in pertinent part:

> (e) . . . the Contracting Officer shall . . . pay to the Contractor the amounts determined by the Contracting Officer as follows . .
>
> \* \* \* \* \* \*
>
> (ii) [T]he total of—
> (A) the costs incurred in the performance of the work terminated, including initial costs and preparatory expense allocable thereto . . .
> (B) The cost of settling and paying claims arising out of the termination of work under subcontracts or orders . . . which are properly chargeable to the terminated portion of the contract . . . ; and
> (C) a sum as profit on (A) above, determined by the Contracting Officer pursuant to 8–303 of the Armed Services Procurement Regulation, in effect as of the date of execution of this contract, to be fair and reasonable; . . . ; and
> (iii) [T]he reasonable costs of settlement, including accounting, legal, clerical, and other expenses reasonably necessary for the preparation of settlement claims and supporting data with respect to the terminated portion of the contract. . . .

The Armed Services Procurement Regulation ("ASPR") Sec. 8–303, incorporated by reference in Section (e)(ii)(C) of paragraph 26 of the General Provisions states as follows:

> (a) Profit shall be allowed on preparations made and work done by the contractor for the terminated portion of the contract. . . . *Anticipatory profits and consequential dam-*

*ages shall not be allowed* . . . . [Emphasis supplied.]

At the time of the termination, plaintiff had paid $1,770 of a stated price of $3,950 for a wrapping machine which it had purchased for the performance of the terminated portion of the contract. However, subsequent to the partial termination, plaintiff sold its business, including all the assets thereof except its claims against the Government. The wrapping machine was transferred to the purchaser along with the other business assets. Except for the purchase of the wrapping machine, the plaintiff had performed no work whatever on the terminated portion of the contract.

The plaintiff timely filed a termination claim with the contracting officer for (1) anticipated profits of $24,774; (2) the $3,950 stated cost of the wrapping machine; (3) $1,600 in accounting fees; and (4) $2,500 in legal fees. On February 14, 1975, the contracting officer denied the claim in its entirety. Thereafter, plaintiff filed a timely appeal with the ASBCA.

On November 28, 1975, the Board affirmed the decision of the contracting officer in all but one respect. On a jury verdict basis, the Board allowed the claim for accounting and legal fees only to the extent of $900 ($400 for accounting fees and $500 for legal fees) based upon its determination that such amount reasonably could be allocated to services performed on the termination claim.

Plaintiff challenges the Board's decision on Wunderlich Act grounds. First, the plaintiff contends that the Board erred as a matter of law within the purview of section 2 of the Wunderlich Act in refusing plaintiff's claim for anticipated profits. Also, under section 1 of the Wunderlich Act, plaintiff claims that the Board's rulings with respect to the claims for the cost of the wrapping machine and for accounting and attorney's fees were arbitrary, capricious and not supported by substantial evidence.

 The dispute as to whether anticipatory profits may be awarded in the case of

a partial termination for the convenience of the Government where no work has been performed on the terminated portion of the contract clearly raises a question of law. As such, the Board's determination, of course, is entitled to no degree of finality. *See e. g., Truong Xuan Truc v. United States*, 212 Ct.Cl. 51, 64 (1976) and cases cited therein.

█ This issue is controlled by the terms of the contract, the regulations incorporated by reference therein, and the case law. Under paragraph 26 of the General Provisions of the contract, *supra*, any recovery of profits on a terminated contract is limited to profits on work actually performed prior to the termination. Section (e)(ii)(A) & (C). The point is emphasized by ASPR 8–303, which is incorporated by reference into paragraph 26. That regulation specifically states that anticipatory profits shall not be allowed. Since it is undisputed that plaintiff performed no work on the terminated portion of the contract, it is clear that the foregoing provisions prohibit recovery of any anticipated profits.

The cases on point show that this court has consistently upheld the validity of those provisions. In *G. C. Casebolt v. United States*, 421 F.2d 710, 190 Ct.Cl. 783 (1970), the Government withdrew its notice of award from the mails prior to receipt by the plaintiff. The court held that if a contract had been formed, a question not decided by the court, such a contract would have contained a convenience-termination clause. The court concluded that:

> Plaintiff, which never started performance, incurred no cost of performance and therefore asks only for its anticipated (but unearned) profits. It is, of course, firmly settled that these are not allowable under a convenience-termination. 421 F.2d at 713, 190 Ct.Cl. at 788.

The court has several times affirmed the principle thus stated in *Casebolt*. *See Kalvar Corporation, Inc. v. United States*, 543 F.2d 1298, 211 Ct.Cl. 192 (1976), *cert. denied*,

434 U.S. 830, 98 S.Ct. 112, 54 L.Ed.2d 89 (1977) and *William Green Construction Co. v. United States*, 477 F.2d 930, 201 Ct.Cl. 616, *cert. denied*, 417 U.S. 909, 94 S.Ct. 2606, 41 L.Ed.2d 213 (1974). Plaintiff has in no way distinguished the present case from those cited nor given any reason why the court should now depart from its prior decisions. The Board was clearly correct in disallowing the claim for anticipated profits.

In support of its contention that the Board erred as a matter of law in denying anticipatory profits, plaintiff cites two cases, namely, *United States v. Behan*, 110 U.S. 338, 4 S.Ct. 81, 28 L.Ed. 168 (1883) and *United States v. Penn Mfg. Co.*, 337 U.S. 198, 69 S.Ct. 1009, 93 L.Ed. 1308 (1948). However, both cases are easily distinguishable from the present case, and neither supports the plaintiff's argument.

In *Behan*, the Supreme Court discusses the measure of damages for a *breach of contract*, which is defined by the Court as a "willful and wrongful putting an end to a contract." 110 U.S. 346, 4 S.Ct. 85. In the case at hand, however, the Government's termination of the contract was not wrongful. To the contrary, as pointed out above, the right of the Government to terminate for its convenience was expressly provided for under the contract.

The second case relied upon by plaintiff, *Penn Mfg. Co.* likewise presented an entirely different situation. In that case, the majority opinion never even reached the question of whether anticipated profits are allowable where there had been a termination for the convenience of the Government. However, Mr. Justice Douglas, in a concurring opinion, speaking for himself and three other justices, noted that had there been a formal contract[1] between the plaintiff and the Government, it would almost surely have contained a convenience-termination clause which was then being widely used in Government procurement. Therefore, the

---

1. Only a "notice of award" had been issued by the Government and then withdrawn the next day.

burden was on the plaintiff to show that its contract would not have contained such a clause, and it failed to carry that burden. The clear implication is that, in any event and irrespective of the different approach by the majority, the standard convenience-termination clause would have precluded recovery for anticipated profits on work not done. In sum, the contract, the regulations, and the court decisions all require a finding that plaintiff is not entitled to anticipated profits on the terminated portion of the contract when it had done no work thereon. There was no error in the Board's decision on this point.[2]

■ Plaintiff's second termination claim is for the cost of the wrapping machine which was purchased for the performance of the canceled portion of the contract. The Board's finding of no entitlement is essentially a factual one. As such, under Wunderlich Act standards, it must be affirmed unless that decision was arbitrary, capricious, or not supported by substantial evidence.

The Board found that, while the machine was in fact purchased for the performance of the terminated portion of the contract, the plaintiff failed to meet its burden of proof in several other essential respects. The Board could find no evidence that the machine was so unique that it was not useful to the plaintiff for other than Item 0003 work. The wrapping machine was clearly not a "special tool" within the meaning of ASPR § 13–101.5.

Also, plaintiff failed adequately to show the value of the machine at the time of transfer to the purchaser of all plaintiff's assets.

The plaintiff says that the Board's finding was arbitrary and capricious because the Board was, in effect, requiring the production of documentary evidence where none existed. Yet the plaintiff points to no persuasive evidence sufficient to controvert the Board's finding. The plaintiff produced evidence of its purchase of the machine and has alleged that the machine was valueless at the time of its transfer to the purchaser of all plaintiff's assets.

However, no evidence was produced which in any way negated the common inference that knowledgeable businessmen do not ordinarily transfer assets free of charge or "gratis". The Board's finding that the machine had value and resulted in no loss to plaintiff was clearly justified.

■ Finally, plaintiff claims that the Board acted arbitrarily and capriciously in limiting the claim for $4,100 in legal and accounting fees to only $900. Under the terms of the contract, claims for attorney's and accounting fees are compensable costs but are limited to those incurred in the preparation of termination settlement claims. In addition, no claim may be made for fees incurred in the preparation of claims which are not compensable, as in this case, the claim for anticipatory profits. *See Topeka Janitor Service*, ASBCA No. 9989, 65–2 BCA 4911.

On two occasions, plaintiff was asked to supply a breakdown of legal and accounting fees between those incurred in the preparation of the anticipatory profits claim (not compensable) and those incurred in the preparation of the claim for the cost of the wrapping machine (potentially compensable). The plaintiff declined to do so probably because the persons rendering the professional services had made no such allocation.

Faced with this incomplete record but recognizing that some legal and accounting fees must have been incurred in pursuance of the potentially allowable claims, the

2. Aside from its Wunderlich Act argument, the plaintiff asserts that the convenience-termination clause is unconstitutional. The argument is that the contract was a contract of adhesion and that "[a]lthough there are no cases on point, petitioner firmly believes that its constitutional rights of due process have been violated by being compelled to waive a right of damage firmly recognized by the Supreme Court." Plaintiff's brief, p. 3. Aside from its other infirmities, the argument fails because the damages sought are not only not firmly recognized but, to the contrary, as the above cases show, this limitation on damages in a convenience-termination has been expressly recognized as valid.

Board then awarded plaintiff $900 for such fees on a "jury verdict basis". The plaintiff has made no showing that this award was erroneous. In fact when one compares the relative sizes of the potentially compensable claim against the contractually noncompensable claim, the Board's allowance may well have been overly generous. However, defendant does not attack the allowance other than to observe that it "is so generous as to be beneficent".

Accordingly, for the foregoing reasons, the plaintiff's motion for summary judgment is denied and defendant's cross-motion for summary judgment is granted. Plaintiff's petition is dismissed.