DELTA DATA SYSTEMS
CORPORATION

v.

William H. WEBSTER, Director, Federal
Bureau of Investigation, et al., and Sys-
tem Development Corporation, Appel-
lants. (Two Cases)

Nos. 84–5833, 84–5834.

United States Court of Appeals,
District of Columbia Circuit.

Feb. 22, 1985.

Stuart H. Newberger, Asst. U.S. Atty.,
Washington, D.C., with whom Joseph E.
diGenova, U.S. Atty., Royce C. Lamberth
and R. Craig Lawrence, Asst. U.S. Attys.,
Washington, D.C., were on the motion, for
federal appellants.

William H. Butterfield, Alexandria, Va.,
with whom Thomas F. Farrell, II, Rich-
mond, Va., and Bernard Fried, Camarillo,
Cal., were on the motion, for appellant Sys-
tem Development Corporation.

Thomas Earl Patton, Washington, D.C.,
with whom Paul G. Dembling, Washington,
D.C., and James D. Crawford, Philadelphia,
Pa., were on the motion, for appellee Delta
Data Systems Corp.

Before ROBINSON, Chief Judge, BORK
and SCALIA, Circuit Judges.

Opinion PER CURIAM.

PER CURIAM:

In *Delta Data Systems Corp. v. Web-
ster,* 744 F.2d 197 (D.C.Cir.1984), modifying

740 F.2d 58 vacating and remanding 589 F.Supp. 355, we ordered the FBI to make a *nunc pro tunc* reselection of contractor under Solicitation No. 2591 if Delta Data so requested. We also recognized Delta Data's right to submit further information on its financial situation at the time of the original selection and to discuss any concerns the FBI might have about that subject.

Delta Data requested a reselection and submitted further financial data, but no further discussions were accorded. Instead, the FBI restored to Delta Data the points it had deducted for financial considerations. The Bureau once again selected SDC as the contractor for the procurement on grounds of "monetary savings," *i.e.*, lower initial out-of-pocket cost, and "technical superiority of the equipment." Minutes of Meeting of Contract Review Board at 2 (Nov. 16, 1984). Delta Data obtained from the District Court a preliminary injunction against the award. Civil Action No. 83–3051 (Nov. 30, 1984) (Order) ("Nov. 30, 1984 Order"). The FBI moved this court for a stay or summary reversal; Delta Data moved for a summary affirmance.

On the substance of the matter, the District Court was correct to find a high probability that Delta Data will succeed on the merits. Regardless of whether the FBI was free to consider initial out-of-pocket cost under the circumstances of this procurement, the other basis for the Bureau's action, the finding of "technical superiority," was evidently invalid since it was based on live test demonstrations carried out after the original selection date. *See* Memorandum of W.E. Baugh, Jr. to Mr. Groover at 2–3 (Nov. 9, 1984). The *nunc pro tunc* reselection which we authorized Delta Data to demand in our prior opinion was a reselection based upon the information before the Bureau at the time the original determination was made. This was clear from the whole purpose of the exercise, which was to "[p]ut[ ] the disappointed bidder in the economic position it would have occupied but for the error. . . ." 744 F.2d at 206–07. It was also clear from our specification as to financial data (the only element specifically at issue) to the effect that "the FBI may consider . . . the financial data *that was before it on the selection date*. . . ." *Id.* at 207 (emphasis added). Resting the reselection determination upon subsequently developed data was impermissible and makes it highly probable that Delta Data will prevail on the merits.[1]

Despite the probable correctness of Delta Data's position, however, the District Court erred in protecting Delta Data's rights by the means of enjoining continuing performance of the SDC contract. Such an injunction, though unusual, is sometimes accorded at the initial stage of contractor selection, *see Motor Coach Industries, Inc. v. Dole*, 725 F.2d 958, 967–68 (4th Cir.1984). At the time this case first came before us, however, the Bureau had already been proceeding under its contract with SDC for over a year. It was the premise of our earlier decision that "[c]onsiderable performance has already taken place under the SDC contract," 744 F.2d at 206, and our conclusion made clear that we thought it inappropriate, in order to secure faithful compliance with federal contracting laws, to interrupt the contract at such a stage— not only if the Bureau failed to make the reselection properly, but even if the FBI *properly* made the reselection and determined that Delta Data should have won. We said:

> If Delta Data is selected, the FBI shall award the contract to Delta Data. If the FBI decides not to honor that contract but to proceed with its arrangements with SDC . . . Delta Data may thereupon pursue its appropriate remedies under the Tucker Act, 28 U.S.C. § 1491 (1982).

---

**1.** There is not even a colorable basis for the Bureau's argument that out-of-pocket cost was an independently efficacious ground. The minutes of the Contract Review Board clearly rested the determination upon both points jointly, stating that "[t]he Board approved the recommended reselection due to the monetary savings and technical superiority of the equipment. . . ." Minutes of Nov. 16, 1984 at 2.

*Id.* at 207. We thus envisioned that the FBI would be free to pursue its arrangements with SDC that had progressed to a stage inappropriate for court-directed recall.

That situation is not changed by the fact that the Bureau has chosen, by mutual agreement with SDC, to modify its original contract, now proceeding under what the parties call a "bridge contract" for a relatively small percentage of the original purchases, and letting the remainder out for a new bid. For purposes relevant here, that novation still represents SDC's contract "under Solicitation 2591," Nov. 30, 1984 Order at 1, which we said should remain unaffected by court order, rather than an entirely new award over which the District Court might exercise some powers of injunction.

■ We therefore set aside the preliminary injunction; and a corollary of our reasoning in doing so is that an injunction against continuation of the SDC contract cannot be awarded as part of the District Court's final relief in this case. Rather, relief will be limited to the plaintiff's Tucker Act remedies—and more specifically, bid preparation costs, *see, e.g., Alchemy, Inc. v. United States*, 3 Cl.Ct. 727, 730 (1983), because the plaintiff has not performed under the contract. The bidder for a government contract such as this one has no legitimate claim to profit from the unperformed contract itself, even where it has actually received the contract award, since the contract is required to contain a clause permitting termination, at any time prior to completion, for the convenience of the government, *see* 41 C.F.R. § 1–8.700–2(a)(1) (1984), with no liability except for actual work performed, *see* 41 C.F.R. § 1–8.701; *Dairy Sales Corp. v. United States*, 593 F.2d 1002, 1005, 219 Ct.Cl. 431 (1979). The reselection process which in our earlier order we authorized the plaintiff to demand would have been of value only if the plaintiff had succeeded in persuading the FBI, not only that (1) it should have selected Delta Data, but also that (2) it should proceed by contract with that firm. Though with regard to the first of these determinations the FBI is limited to consideration of *"tunc"* factors, with regard to the latter it may assuredly consider *"nunc"* factors as well. The unlikelihood of the Bureau's deciding to *proceed under* the reconsidered contract was the reason we gave Delta Data in our earlier opinion the option to demand bid preparation costs at once. Perhaps proceeding with the reselection option was not entirely fruitless, however, since the reselection process may have contributed to the Bureau's decision to fragment the contract, a consequence of some potential benefit to this plaintiff.

In different circumstances, our course might be to dissolve the preliminary injunction and remand to the District Court with instruction that, if it finds the FBI considered subsequently developed facts, it require the Bureau to reconduct the selection properly. By reason of the fragmentation of the contract, however, there no longer exists the massive $50 million procurement that induced us in our earlier opinion, *see* 744 F.2d at 207, to consider reselection as an alternative to relegation of the plaintiff solely to its Tucker Act remedy, *see Old Dominion Dairy Products, Inc. v. Secretary of Defense*, 631 F.2d 953, 969 (D.C.Cir. 1980). Accordingly, we remand to the District Court with instruction that it entertain a claim for bid preparation costs under the Tucker Act or, if such claim exceeds $10,-000, transfer the case to the Claims Court under 28 U.S.C. § 1631 (1982).

*So ordered.*