**Ronald J. RHEN, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 308–88C.**

United States Claims Court.

June 2, 1989.

Andrea Larry, Washington, D.C., with whom were Asst. Atty. Gen. John R. Bolton, Asst. Director David M. Cohen and Asst. Director M. Susan Burnett for defendant. Richard A. De Clerck, U.S. Dept. of the Interior, of counsel.

## MEMORANDUM OPINION

LYDON, Senior Judge:

Plaintiff, proceeding pro se, challenges the default termination of a contract he had with the Bureau of Land Management, Department of the Interior (BLM). In his complaint, plaintiff sets forth five separate claims for damages he seeks to recover emanating from this default termination. Defendant, after answer, has responded to the complaint by filing a motion for partial summary judgment as to three of the five claims, contending that, as to these three claims, there is no genuine issue as to any material fact and, accordingly, defendant is entitled to judgment in its favor as a matter of law. Plaintiff has filed an opposition to defendant's motion.

Upon consideration of the submissions of the parties, oral argument being considered unnecessary, the court concludes that defendant's partial motion for summary judgment should be granted.

### I.

On March 5, 1985, the BLM, Portland Oregon District, issued an Invitation for Bids (IFB) for "One Time Through Precommercial Thinning." The contract work involved the cutting and thinning of surplus trees and the cutting of bushes so as to provide additional growing space for existing trees. The IFB called for work to be performed on two different sites in the North Umpqua Recourse Area in the Roseburg District, Oregon. One work site, known as "Lone Rock" contained 307 acres; the other site, known as "Above The River", contained 216 acres. Roadways through the two areas of the project were clearly delineated on contract documents. Under the IFB, an unqualified bid on both work sites required the contractor to complete the contract work in sixty days. The bid opening day was April 4, 1985.

Ronald J. Rhen, Bend, Or., pro se plaintiff.

Plaintiff was the successful low bidder at $42,846.50. His bid covered both work sites and was unqualified. Accordingly, he was required to complete the contract within sixty days. Plaintiff was awarded the contract on April 18, 1985, and the Notice To Proceed with the work became effective April 30, 1985. Plaintiff began work on April 30, 1985.[1]

Plaintiff's progress on the contract work was slow and BLM personnel became concerned about the matter. On May 14, 1985, an "Instruction," and on May 22, 1985, a letter were sent to plaintiff by BLM warning him of BLM concern that with his present work force he would not be able to complete all of the contract work within the remaining contract period. Plaintiff was requested to submit a revised work schedule to BLM. On June 28, 1985, the contract time expired and only forty-two percent of the work had been completed.

On June 28, 1985, BLM issued a Show Cause Notice to plaintiff advising that the Government was considering terminating his contract under the default provisions of the contract. Plaintiff was given ten days to respond to this Notice.

Plaintiff responded to the Notice of July 5, 1985. He contended the contract work had not been completed on time because he had trouble locating qualified employees and also had problems with his subcontractors. He also contended that some of his workers were having problems with the BLM project inspector in that the inspector was too strict in requiring adherence to contract requirements.[2]

On July 16, 1985, BLM terminated plaintiff's contract for default pursuant to the Default Clause of the contract and so notified plaintiff. In support of this default termination, the contracting officer issued

Findings and a Decision on September 27, 1985. The contracting officer found that plaintiff had failed to complete the contract work within the time required by the contract and that his failure in this regard was not the result of any excusable delays.[3]

On September 22, 1986, plaintiff filed suit in this court contesting the default termination and presenting a number of monetary claims. The suit was dismissed without prejudice by the court, in an unpublished Memorandum Opinion dated February 27, 1987, because plaintiff had never filed monetary claims with the contracting officer. On March 24, 1987, plaintiff filed money claims with the contracting officer. Plaintiff sought to recover approximately $520,446.63, plus interest as damages flowing from termination of his $42,846.50 contract. In his claim to the contracting officer, plaintiff alleged numerous instances of delay on the part of the Government which he claims were responsible for his failure to complete the contract work in a timely manner. No decision having been rendered on these claims by the contracting officer within sixty days, plaintiff, on March 23, 1988, filed the instant action in this court. See in this regard, *Vemo v. United States*, 9 Cl.Ct. 217, 221–22 (1985).

In his complaint, plaintiff seeks to recover for the alleged improper termination of his contract the following damages:

1) Plaintiff seeks to recover $7,005.84 which he paid the Amwest Surety Insurance Company for completing the terminated contract. This claim had been presented to the contracting officer;

2) plaintiff seeks to recover $11,511.52 representing income he would have earned in performing the contract had it not been terminated. This claim

---

1. BLM personnel had discussed work performance and the number of work men necessary to complete the contract within the contract time period with plaintiff prior to April 30, 1985.

2. According to plaintiff, the inspector "seems to think we are building an airplane and tolerance must be followed exactly. This type of inspecting, of course, causes delays and a poor attitude on the part of the crew."

3. The contracting officer specifically addressed the question of whether there was interference by the government inspector which may have caused the plaintiff delays in work performance. He found no such interference. He did find that the project inspector tried to help the plaintiff obtain additional work crews by contacting local contractors in the area to work on the contract for plaintiff.

had been presented to the contracting officer;

3) plaintiff seeks to recover $1,100.00 for the value of road acreage deleted from the contract. This claim had been presented to the contracting officer;

4) plaintiff seeks to recover $850,000 on the ground he lost his ability to get bonding as a result of the default termination of his contract by BLB. This claim had been presented to the contracting officer but only for $500,-000;

5) plaintiff also seeks interest on the above claims, attorney fees and costs of litigation.

## II.

Defendant has moved for partial summary judgment, with supporting documentation, on claims (2), (3) and (4), *supra*.

A. *The $11,511.52 Claim (# 2 supra)*

■ As indicated above, plaintiff seeks to recover $11,511.52 on the ground he would have earned this amount had his contract not been terminated. As stated by plaintiff, this claim is one for income he would have made had he been able to complete the contract. Thus, his claim is one for anticipated but unearned profit. Defendant contends that, under the circumstances of this case, plaintiff is not entitled to recover on this claim as a matter of law. Defendant's position is well taken.

The Default Clause in plaintiff's contract provides, in substance, that if a default termination is subsequently found to be improper, "the right and obligations of the parties shall be the same as if the termination had been issued for the convenience of the Government." *See Nolan Brothers Inc. v. United States,* 405 F.2d 1250, 1254–55, 186 Ct.Cl. 602 (1969). Accordingly, as-

suming arguendo that plaintiff's contract was improperly terminated, he would not, as a matter of law, be entitled to recover anticipated profit. This is so because under the contract's Termination For Convenience Clause, anticipated, but unearned profits are not recoverable. *Dairy Sales Corp. v. United States,* 593 F.2d 1002, 1005, 219 Ct.Cl. 431 (1979). Plaintiff's opposition brief refuses to come to grips with this state of the law. Plaintiff's contention that he is not seeking "profits" but only "income" or "gross earnings" is most unpersuasive reasoning on the undisputed facts of this case.

In the case at bar, assuming the default termination to be improper, the measure of damages available to plaintiff under the Termination For Convenience Clause of the contract would be limited to the costs actually incurred up to the date of termination, plus a reasonable profit on work actually performed prior to termination. *William Green Constr. Co. v. United States,* 477 F.2d 930, 934, 201 Ct.Cl. 616 (1973).[4]

B. *The $850,000 Claim (# 4, supra):*

■ Plaintiff seeks to recover $850,000 as lost income he suffered because of his inability to obtain bonding resulting from the default termination of his contract. Again, plaintiff seeks to recover anticipated, but unearned, profit. As discussed previously, plaintiff is not, as a matter of law, entitled to recover unearned, but anticipated profits under the circumstances of this case.

Plaintiff claims that the lack of ability to obtain bonding prevented him from obtaining other contracts which would have enabled him to obtain profits in the amount of the $850,000 claimed. In substance, plaintiff's claim is one for general loss of business as a result of the default termination. Such a damage claim is too remote or consequential in nature to allow for a recovery

---

**4.** It is noted that defendant did not include plaintiff's claim (# 1, *supra* ) to recover amounts he paid his surety on the defaulted contract in its motion for partial summary judgment. Presumably, defendant viewed these costs as beyond the reach of the Termination For Convenience Clause of the contract and/or more

properly an adjunct of the excess procurement cost incurred by the surety in completing the defaulted contract. There is no indication in the materials presently before the court that defendant assessed excess reprocurement costs against plaintiff.

thereon. Since the damages claimed are too remote, consequential and speculative, they are, as a matter of law, not recoverable in any event. *William, Id.* 477 F.2d at 936; *Ramsey v. United States,* 101 F.Supp. 353, 357, 121 Ct.Cl. 426 (1951); *CCM Corp. v. United States,* 15 Cl.Ct. 670, 671–72 (1988). The $850,000 claim must be, and is, denied.

### C. *The $1,100 Claim (#3, supra)*

█ Under the contract, plaintiff was to provide pre-commercial thinning services on two sites in the Umpqua Resource Area. These sites were identified as Lone Rock, a 307 acre tract, and Above The River, a 216 acre tract. The contract documents contained project area maps which clearly delineated the area to be worked on by means of cross-hatching with diagonal lines on the project area maps. The roads throughout the work site areas were also delineated on the project area maps. The roads were not cross-hatched with diagonal lines. A legend on the project area maps identified the cross-hatched with diagonal lines, area as the "Project Area", and the roads were identified as two parallel lines with no cross-hatching with diagonal lines between the parallel lines. Under the contract, plaintiff was to thin trees and cut brush on the project area maps. The cross-hatched areas of the Lone Rock tract consisted of 307 acres, whereas the cross-hatched areas of the Above The River tract consisted of 216 acres. These same acreages were also set forth in the contract Schedule of [work] Items. The acreages stated in the Schedule of Items, on which the bids were submitted, did not include the acreage occupied by roads traversing the project areas.

Plaintiff seeks to recover $1,100 for the value of road acreage deleted from the contract. As stated above, the roadways were excluded from the project area scope of work because no thinning was done on the roadways. A reasonable reading of the contract documents supports this fact. While plaintiff claims the road acreage was deleted from the contract, the fact is, according to the unrefuted affidavit of the successor contracting officer on the contract in question, that the road acreage was not included in the work project area acreages because no thinning was done on roads. The contract work acreage areas of 307 acres, Lone Rock, and 216 acres, Above The River, did not include road acreage when the contract was advertised, awarded, or at any time thereafter.

Further, the contract contained a provision that permitted plaintiff, "at any time during the course of the contract" to request reassurement of any work unit if he felt that the acreage stated on the project area map was incorrect. At no time during contract performance did plaintiff make a request for remeasurement of the work project acreage.

As a matter of contract interpretation, which is a question of law, *George Hyman Constr. Co. v. United States,* 832 F.2d 574, 579 (Fed.Cir.1987), the roadways were not designated as project work areas and were not included in the scope of the contract for pay purposes. The contract project maps clearly delineated the project work areas and this delineation clearly excluded the roadways. Since the purpose of the contract was to provide precommercial thinning, it would be unreasonable to read the contract as requiring the thinning of roadways which did not require any thinning.

█ Even if the issue is viewed as a mixed question of law and fact, the contract documents, together with affidavit and other materials submitted in support of defendant's motion for summary judgment, establish the absence of any genuine issue of fact and show that defendant, as the moving party, is entitled to judgment as a matter of law. RUSCC 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). Plaintiff may not rest upon general denials in its pleadings or otherwise, but must offer countering evidence sufficient to create a genuine factual dispute. "A dispute is *genuine* only if, on the entirety of the record, a reasonable jury could resolve a factual matter in favor of the non-movant," *Sweats Fashion, Inc.*

*v. Pannill Knilling, Inc.*, 833 F.2d 1560, 1562 (Fed.Cir.1987).[5]

In his response to defendant's contentions, plaintiff first argues that work on the roads was valued at $1650.32 and points to a February 14, 1986 decision of the contracting officer in support thereof. A reading of that decision does not support plaintiff's statement. In that decision, the contracting officer found that plaintiff had dumped "slash" (residue, cut branches, bushes, etc.) on the roadways thereby creating a fire hazard. Under the contract, plaintiff was required to remove slash from the work area. The contract provided in clear language that "all roads shall be kept free of slash concurrently with thinning." He failed to do this. Since plaintiff's surety also refused to remove the slash, the contracting officer used Forest Service Job Crews to remove the slash at a cost of $1,650.32. The contracting officer billed plaintiff for this amount. Subsequently, on April 18, 1986, the contracting officer withdrew the February 14, 1986 decision and instructed that the amount of $1650.32 be paid to plaintiff. There was no explanation for this turn of events. In any event, it is clear that plaintiff's contention that the roads were "valued at $1650.32 for 3000 feet of road" is erroneous. Plaintiff's mere assertions and empty conclusions, in the face of defendant's affidavit and the contract documents, are insufficient to defeat defendant's supported motion for partial summary judgment. *See Pure Gold Inc. v. Syntex (U.S.A.) Inc.*, 739 F.2d 624, 626, 627 (Fed.Cir.1984).[6]

## III.

Upon consideration of the briefs of the parties, and without oral argument, the court grants defendant's motion for partial summary judgment and accordingly dismisses with prejudice plaintiffs claims for A. $11,511.52, B. $850,000; and C. $1,100. The parties are directed to advise the court within thirty (30) days of the date of this Memorandum Opinion as to the schedule of proceedings necessary to dispose of the remaining claim(s) in this case.

---

**5.** The materials before the court, viewed in a light most favorable to plaintiff, suggest that both parties may have been responsible in varying degrees for the delay in performing the defaulted contract. Plaintiff, in his letter of July 5, 1985 to the BLM conceded that the Government was not responsible for all the delay in performing the contract. If this turns out to be the case, there may well be no recovery in this case in any event under the proposition that where both parties contribute to contract delay neither can recover damages unless there is in the proof a clear apportionment of the delay and the delay time and expense attributable to each party. *Coath & Goss, Inc. v. United States,* 101 Ct.Cl. 702, 714–15 (1944). *See also Vogt Bros. Mfg. Co. v. United States,* 160 Ct.Cl. 687, 709 (1963); *S.W. Marshall v. United States,* 164

F.Supp. 221, 143 Ct.Cl. 51, 56 (1958); *Hargrave v. United States,* 130 F.Supp. 598, 132 Ct.Cl. 73, 81 (1955).

**6.** Since the contract documents unambiguously show that road acreage was excluded from the work units on which thinning was to be performed, the extrinsic evidence, i.e., the February 14, 1986 decision of the contracting officer, relied on by plaintiff, improperly as indicated above, is irrelevant, and the court's interpretation controls over such extrinsic evidence in any event. *See Horn & Hardart Co. v. National Railroad Passenger Corp.,* 793 F.2d 356, 359–60 (D.C.Cir.1986); *Giles v. Howard University,* 428 F.Supp. 603, 605 (D.C.D.C.1977).